James P. MITCHELL, Secretary of Labor, U. S. Department of Labor, Plaintiff,

v.

H. B. ZACHRY COMPANY, a corporation, Defendant.

Civ. No. 2704.

United States District Court, D. New Mexico.

Jan. 4, 1955.

Paul Larrazolo, U. S. Atty., Albuquerque, N. M., Harry Campbell, Jr., Asst. Reg. Atty., Dallas, Tex., for plaintiff.

T. B. Keleher (of Keleher & McLeod), Albuquerque, N. M., Chester H. Johnson, San Antonio, Tex., R. Dean Moorhead, Austin, Tex., for defendant.

ROGERS, District Judge.

This is an action seeking an injunction pursuant to the provisions of Title 29 U.S.C.A. § 217, against the defendant H. B. Zachry Company, a corporation, for alleged violations of the Fair Labor Standards Act of 1938, and amendments thereto, same being Title 29 U.S.C.A. § 201 et seq. The plaintiff in this case is James P. Mitchell, Secretary of Labor, U. S. Department of Labor.

From the admitted allegations in the pleadings, from an extensive stipulation entered into between the parties at a trial of this cause, and from additional evidence adduced at said trial, the following undisputed facts appear:

The defendant corporation is organized and exists under the laws of the State of Delaware, and has its principal office and place of business in San Antonio, Texas. Its main course of business is that of a construction company.

The operations of defendant sought to be adjudged as within the Fair Labor Standards Act are performed at the Holloman Air Force Base in Otero County, New Mexico, and are being performed pursuant to a certain contract entered into on May 24, 1954 between the United States of America, Department of the Army, Corp of Engineers on the one hand, and the defendant corporation on the other.

The work to be performed under such agreement is for the construction of airfield pavement. In effect, work under this contract repairs, renovates, widens and considerably extends existing airfield runways at Holloman Air Force Base. There is also to be constructed a new runway at said Base.

Practically all the construction called for under this agreement, is within a restricted area, which, for security reasons, is not open to the general public, and taxi-ways and runways in such region are not used by conventional commercial airlines, but are restricted to military aircraft, as hereinafter more fully explained, and for certain experimental activities, the nature of which need not be set forth herein.

It appears that in the region in which defendant is working, at least one daily flight of interstate origin, lands, and at least one interstate flight originates.

These flights carry both personnel and cargo on Government owned and operated aircraft. In addition to these flights, it appears that training flights in excess of 25 leave and return daily to this area.

In a different section of Holloman Air Force Base, and on runways on which defendant's contract does not apply, Continental Airlines have operated since the middle of September, 1954. Continental Airlines are undisputedly engaged in interstate commerce.

Holloman Air Force Base, New Mexico, is a government owned and operated airfield installation, and at all times material hereto has been used by the U. S. Army and the U. S. Air Force for certain restricted research activities, and for the training of Air Force personnel. Its runways are used by light and heavy bombers and military transport and cargo ships, together with other types of military aircraft.

At the inception of performance of defendant's contract, defendant paid its employees in strict compliance with the Fair Labor Standards Act of 1938, in that each employee who worked in excess of 40 hours in a week was paid time and a half for the hours worked in excess of said 40 hours. This method of payment was the result of an error on the part of one of defendant's superintendents. When this method was known to the home office of defendant, instructions were given to those in charge of the project to discontinue the practice, and only pay overtime payments of time and a half to laborers who worked in excess of 8 hours per working day. This latter method of payment is that specifically prescribed in the above-mentioned contract between the United States and defendant corporation. This latter method of payment continued for several months, and until the instant cause was filed. At that time, in order to avoid a separate hearing on an Order to Show Cause for a Temporary Injunction, it was agreed between the parties hereto that the defendant would comply with both the Fair Labor Standards Act, and the Contractual and Statutory Eight-Hour Law, compliance with the former Act not to be an admission on the part of the defendant as to ultimate liability thereto.

The Answer is, in effect, a general denial, coupled with defenses that the remedy sought is premature; that the reasons for the prayer of the complaint are moot, and that the alleged violations, if any, are de minimis. At the conclusion of the hearing at which the above-related facts were adduced, the Court called for memoranda, and excellent briefs were submitted by each party hereto. The Court has studied the briefs and authorities therein contained, and now is ready to announce its decision on the two following questions:

1. Are the defendant's employees, while performing their functions under the above-mentioned contract between defendant and the United States, engaged in commerce within the purview of Title 29 U.S.C.A. § 207(a); and

2. If the Fair Labor Standards Act of 1938 applies to defendant's contract, should an injunction be issued enjoining and restraining the defendant and its officers from violating the provisions of said Act? The questions will be considered in the order named.

At the outset, the Court is of the opinion that neither the training flights, the restricted experimental activity, nor the Continental Airlines flights should be considered, one way or another, in arriving at the eventual question of whether defendant's employees are engaged in the interstate commerce. In the first place, from the evidence adduced at the trial, the training flights are purely military in nature, and by no rational basis could they be construed to transport either personnel or goods in commerce. Many of these flights return to the base without any intervening landings, and any intervening landings which might occur, would be only for the purpose of repair of the aircraft, or refueling thereof.

As to the second category, that of experimental activity, the nature of such activity is of such high security that no probative evidence was furnished the Court on the trial hereof, and, accordingly, no weight can be given thereto.

As to the regular flights of Continental Airlines, this activity, in the opinion of the Court, has no effect in this matter, because of the fact that the landings and take offs of Continental Airlines is in a region far distant from that where defendant is working; that the construction of the runways used by the commercial airlines differ from that involved in the contract; the area used by the commercial airline is relatively unrestricted, and lastly, the use by Continental Airlines of certain facilities at the Air Base is some four months subsequent to the date of the agreement between the United States and defendant corporation.

We are thus confronted with the eventual problem of whether the duties required under the contract between the Government and the defendant, and performed by defendant's employees in repairing, renovating, widening and extending existing runways, and the building of new taxiing areas, and a new runway, constitute an engagement in interstate commerce, within the Fair Labor Standards Act of 1938.

The question is an extremely close one, in the Court's opinion, but must be answered in the affirmative. The briefs submitted by each party were most exhaustive in their scope, and the Court feels that every applicable citation of authority was included in either one or both the memoranda, which it has at hand.

█ The first problem that occurred to the Court was whether, assuming that the personnel and cargo which arrives and leaves Holloman Air Force Base by interstate flight are military personnel and military matériel, are such flights, flights in interstate commerce, within the provisions of the Fair Labor Standards Act? In this connection, it appears that the question has been settled with quite a degree of finality, by the case of Powell v. U. S. Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017, decided by the Supreme Court of the United States in May of 1950. This case stands for the proposition that the Fair Labor Standards Act applies to employees of a private contractor operating a government-owned munitions plant under a contract with the Government. While, strictly speaking, the holding is limited to whether the employees are engaged in the *production* of goods for commerce, within the meaning of the Act, the reasoning set forth in the opinion is applicable with like force to the related question of whether employees are engaged in interstate commerce. The Court specifically held that in the Fair Labor Standards Act, the primary purpose of Congress was not to regulate interstate commerce, as such, but was to eliminate sub-standard labor conditions throughout the nation; that said Act sought to raise living standards, without substantially curtailing employment or earning power, and applying such reasoning to the Powell case, held, specifically, that the Government's munitions plants provided an appropriate place for the beneficial application of the Act's standards of working conditions, without danger of reduced employment through loss of business.

If the Supreme Court so reasoned in the Powell case, relative to munitions manufactured through a contract with the Government, transported to another branch of the Government by various agencies of transportation, and ultimately used by the Military, so in the case at bar, the doctrine of the Powell case is applicable with equal force.

A somewhat similar set of facts existed in the case of Divins v. Hazeltine Electronics Corp., 2 Cir., 163 F.2d 100. In that case the question was whether defendant's employees engaged in radar

and radio work for Navy vessels were within or without the operation of the Fair Labor Standards Act. The Court of Appeals for the Second Circuit agreed with the trial court that operations of the employees on combat vessels was not within the operation of the Act, but that the activities of the employees relative to transport or cargo vessels was within the Act, even though the matériel was military in nature, and was destined for consummation by military personnel.

A case dealing specifically with an air field is that of Laudadio v. White Construction Co., 2 Cir., 1947, 163 F.2d 383. There, the Court held, in effect, that as to Floyd Bennett Field, in Brooklyn, New York, it was extremely likely that the Navy made some use of the field for interstate commerce, such as the arrival and departure of officers, men and mail in interstate journeys, and that the defendant's work, at least insofar as it involved extending existing runways, reconstructing the control tower and making additions to existing hangars, was work on instrumentalities of commerce.

In the case at bar, the evidence is stronger than in the Laudadio case, as there was direct evidence of daily flights of interstate nature of personnel and matériel, while in the Laudadio case, the Circuit Court appeared to take judicial notice of a situation which it felt must have taken place at Floyd Bennett Field.

The same theory was announced in Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334. There, the deepening of navigable waters by channels with retaining walls for navigation by Navy combat ships was held to constitute an engagement in interstate commerce.

Another landmark case decided by the Supreme Court is that of Overstreet v. North Shore Corp., 318 U.S. 125, 63 S. Ct. 494, 87 L.Ed. 656, decided in 1943. The particular activity in question was the operation of a toll road and drawbridge over a navigable waterway. One employee operated the drawbridge, a second employee repaired and maintained the drawbridge, and a third employee collected the tolls which furnished the funds for operating the venture. The Court held that vehicular roads and bridges are as necessary to interstate movement of persons and goods as railroad tracts and bridges are to interstate transportation by rail. This being so, so, likewise, would runways and taxiing facilities be indispensable to interstate flight of aircraft.

The scope of the Fair Labor Standards Act was extended still further by one of the latest enunciations of the Supreme Court, in Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 566, 97 L.Ed. 745, decided in 1953. It was there held that petitioner's employees, who do not work on interstate roads, themselves, but are engaged in the production of the road surfacing mixture for eventual use on interstate roads, are engaged in the production of goods for commerce, within the coverage of the Fair Labor Standards Act. Here, again, the specific point was "production of goods for commerce", rather than "engaged in commerce", but the test as to each phrase appears to be identical.

The defendant Zachry Corp. has presented some very interesting cases, but the Court does not believe that any of them are controlling herein. The first case of interest is that of Scholl v. McWilliams Dredging Co., 2 Cir., 169 F. 2d 729. In this case the facilities in Greenland were considered as being later used as instrumentalities of commerce, rather than solely as instrumentalities of war. However, in that case, the plaintiff's work did not relate to either repair or reconstruction of existing instrumentalities of commerce, but pertained to completely new construction. This, under the doctrine of the Overstreet case, militates against coverage by the Fair Labor Standards Act. In addition to this, a detailed description of

the plaintiff's functions indicated considerable remoteness from actual participation in construction activity.

The Oak Ridge, Tennessee project, was held not to be within the purview of the Act, in the case of Selby v. J. A. Jones Construction Co., 6 Cir., 175 F.2d 143. The Court held that the use of the atomic bomb, as an instrument of war, is the antithesis of engagement in interstate commerce; as to the Selby case, this Court is of the opinion that the effect of the opinion has been greatly modified, if not, in effect, overruled by the opinion of the Supreme Court in the Powell case, supra.

Defendant cites the case of Kam Koon Wan v. E. E. Black, Limited, 188 F.2d 558, decided by the Court of Appeals for the 9th Circuit, in 1951. This case, like some of the others cited by defendant, is based on the proposition that the activity of the defendant's employees was too remote from interstate commerce to be a part thereof. Such a situation does not exist in the case at bar.

Perhaps the leading case on the Fair Labor Standards Act of 1938, in this Circuit, is that of Tobin v. Pennington-Winter Construction Co., 10 Cir., 1952, 198 F.2d 334. This case deals with construction of a dam and clearing of a reservoir site in an area across a non-navigable stream which flowed into a navigable stream, as a part of a Federal Flood Control Project. The Court held that employees engaged therein were within the operation of the Fair Labor Standards Act.

■ Under all of the authorities cited by the parties, the Court has come to the eventual conclusion defendant's employees, under the May, 1954 contract with the Government, were engaged in interstate commerce, within the scope of the Fair Labor Standards Act of 1938.

There must finally be decided, the question of whether or not an injunction should be entered in this cause, enjoining violation by defendant corporation, of the provisions of the Act. As is above reflected in a summary of the pleadings, defendant resists injunctive relief to plaintiff, on the grounds, (1) that the remedy sought is premature; secondly, that the reasons for the prayer are moot; and third, that the alleged violations, if any, are de minimis. Somewhere in the course of the proceedings further evidence of reliance on advice of defendant's legal counsel, and reliance on an opinion from the Office of the Solicitor of the U. S. Department of Labor from Dallas, on the Bluebonnet Ordnance Plant near McGregor, Texas, were raised as bars to the granting of injunctive relief to the plaintiff, reliance being had upon Section 259 of Title 29 U.S.C.A.

■ The Court does not believe that the remedy sought, is premature, inasmuch as there is no provision, either by the express terms of the Act, or in the case law interpreting the Act, requiring demands or notice to an employer, prior to the filing of the bill in equity for injunctive relief.

As to the defense that the question is moot, the defendant states that it is, at the present time, complying with the spirit and letter of the Act, in fulfilling its contract with the Holloman Air Force Base. Except for the first few weeks of its operation, when, through a mistake on the part of a field man in charge of payrolls, the employees were paid in accordance with the Act, the defendant did not comply with the terms of the Act until approximately November 7, 1954, under the following circumstances which appear in a stipulation of the parties:

"Since on or about November 2, 1954, defendant has operated and is now operating the job at Holloman Air Force Base as though it is subject to both the Fair Labor Standards Act and the Contractual and statutory Eight-Hour Law. The circumstances giving rise to such action are as follows:

"On or about November 12, 1954, the plaintiff, represented by Charles H. Kelly, attorney for the United States Department of Labor, and the defendant, represented by George W. Krog and T. B. Keleher, attorneys, and by Amado Cavazos, its Treasurer, had a conference with the Honorable Carl A. Hatch in the chambers of Judge Hatch, wherein the defendant requested that the setting for the show cause order be vacated. The attorney for the plaintiff objected to vacating such setting, and, in the presence of Judge Hatch, said attorney inquired if the defendant would 'comply with the provisions of the Fair Labor Standards Act.' Mr. Keleher stated he did not believe such question to be proper in view of the presence of Judge Hatch. However, Judge Hatch advised Mr. Keleher that, if the defendant should elect to comply with the Act pending a hearing on the merits, he would not hold that such action was an admission that the Act was legally applicable to defendant's work at the Holloman Air Force Base. With this understanding, the defendant agreed to comply with the provisions of the Fair Labor Standards Act on this project pending a hearing on the merits; and, since November 7, 1954, has been paying its employees at rates not less than one and one-half times their regular rates for hours worked in excess of 40 in the work week. The plaintiff, in consideration of this agreement, withdrew his objection to the vacating of the show cause setting."

■ It is quite evident that there is still a live bone of contention between the parties hereto, as to the application of the Act to the operations of the defendant, under the present and similar contracts.

■ As to the defense that the alleged violations, if any, are de minimis, it appears that the difference between wages paid under defendant's contention, and those required to be paid under the Act, is approximately $4,000. Even in these days of inflation, the sum of $4,000 does not appear de minimis to this Court. In addition, the amount could be increased by several thousand dollars more, before the termination of the agreement between the Government and the defendant.

■ Defendant urges, with considerable vigor, that inasmuch as it relied on an opinion from the Office of the Solicitor of the U. S. Department of Labor, dated June 1, 1954, relative to certain construction and related activities at the old Bluebonnet Ordnance Plant near McGregor, Texas, such good faith reliance exculpates defendant from any injunction, in view of the language of Section 259 of the Act. The Court does not desire to over-extend an already lengthy opinion, by reproducing the letter of enquiry to the Department, or the response to the Phillips Petroleum Co., under whom defendant had a subcontract on the Bluebonnet job. Suffice it to say, the Phillips Petroleum Co. had a cost-plus contract with the Government, to erect a manufacturing plant at McGregor, Texas, for jet fuel.

The following differences in the two contracts, namely, the Bluebonnet job and the Holloman Air Force job, occur to the Court: The former was new construction, in effect, in that the repairs to the then-existing structures were for the purpose of converting said structures and adapting them for a new purpose, namely, the manufacture of jet fuel. Nothing was, at that time, being manufactured, and the construction on the Bluebonnet job was for future operations. Accordingly, all activity in connection therewith could reasonably be considered as new construction. Secondly, the opinion of the Solicitor for the Department was limited to those employees engaged in construction. Lastly, the contractor was paying in accordance with the Fair Labor Stand-

ards Act all employees engaged in the procurement and receiving of materials shipped to the project in interstate commerce. The above differences in the factual background of the two jobs, would seem to preclude a reasonable contractor from considering that opinion controlling in the Holloman Air Force job.

Perhaps the best answer to this last defense is that Section 259 provides that no employer who relies on any written administrative interpretation "shall be subject to any liability or punishment" on account of the failure of the employer to comply with the Act.

This Court did not consider that an injunction was either the imposition of liability, or a punishment. To quote from McComb v. Goldblatt Bros., Inc., 7 Cir., 166 F.2d 387, 390, cited by defendant in its able brief: "The historic injunction process was designed to deter, not to punish."

The Court, accordingly, disposes of the two questions, as follows: It will entertain a short Judgment, the decretal portions whereof will first hold that the activity of defendant's employees on the Holloman Air Force job are subject to the Fair Labor Standards Act of 1938 and amendments thereto, and secondly, that the defendant will comply, in the future, with said Act.

Each party has ten days within which to submit proposed forms of a judgment in accordance with this decree. The defendant, by so doing, will not be deemed to have waived its objections and exceptions to the matters set forth in this opinion.

The author of this opinion, during his practicing days as an attorney, noticed that certain departments of our National Government have what are known as "bureau forms of Judgments". I don't want one of them submitted in this case. I believe that both interesting questions raised in this cause have been disposed of by the foregoing opinion. Costs will be allowed the plaintiff.