# MITCHELL, SECRETARY OF LABOR, *v.* LUBLIN, McGAUGHY & ASSOCIATES ET AL.

No. 37.   Argued October 21, 1958.—Decided January 12, 1959.

*Bessie Margolin* argued the cause for petitioner. With her on the brief were *Solicitor General Rankin, Stuart Rothman* and *Jacob I. Karro.*

*Alan J. Hofheimer* argued the cause for respondents. With him on the brief was *Robert C. Nusbaum.*

*Milton F. Lunch* filed a brief for the National Society of Professional Engineers, as *amicus curiae,* in support of respondents.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

Petitioner, the Secretary of Labor, brought this action under § 17 of the Fair Labor Standards Act, 29 U. S. C. § 217,[1] to restrain respondent [2] from violating the record-keeping and overtime provisions of the Act. 29 U. S. C. §§ 206, 207, 211. The complaint was dismissed basically on the lower court's conclusion that the activities of respondent, an architectural and consulting engineering firm, were local in nature and not within the Act's coverage. 250 F. 2d 253. We granted certiorari, 356 U. S. 917, to resolve an apparent conflict with a decision of another Court of Appeals in a similar case.[3]

Respondent is hired to design public, industrial and residential projects and to prepare plans and specifica-

---

[1] "The district courts . . . shall have jurisdiction, for cause shown, to restrain violations of section 15 of this title. . . ."

Section 15 makes it unlawful to violate, *inter alia,* any of the provisions of §§ 6, 7, 11 (c) and 11 (d), 29 U. S. C. §§ 206, 207, 211 (c) and 211 (d).

[2] The action was commenced against Lublin, McGaughy & Associates, a copartnership, Alfred M. Lublin, John B. McGaughy, William T. McMillan and William Marshall, Jr., doing business as Lublin, McGaughy & Associates, and each of those persons individually. Throughout the action, these defendants have been treated as a single business entity which we shall refer to herein as respondent.

[3] *Mitchell* v. *Brown Engineering Co.,* 224 F. 2d 359 (C. A. 8th Cir.), certiorari denied, 350 U. S. 875.

tions necessary for their construction. It has offices in both Norfolk, Virginia, and Washington, D. C., and it employs some sixty-five or seventy persons. Respondent does considerable work for the armed services. The District Court estimated that approximately 60% of the work in the Norfolk office has been done for the Army Engineers or the Navy Department while 85% of the work in Washington has been performed for similar agencies or for subdivisions of local governments in the District and nearby States. Many of respondent's projects and clients are located outside Virginia and the District of Columbia. A typical project undertaken in the past was the design of a standard mobile Army warehouse with the attendant preparation of detailed plans and specifications. In addition, respondent has designed various construction projects including the widening of streets at a naval operating base, the extension and paving of airplane taxiways and parking aprons at a naval air station, a local sewerage system in Maryland, the alteration of various hangar facilities at military air bases, the relocation of radio and television facilities, the improvement of state roads and turnpikes, and the repair of government buildings at shipyards. The balance of respondent's activity has consisted of preparing plans and specifications for the construction of private projects such as homes, commercial buildings, bus terminals, shopping centers and the like. Respondent has performed certain supervisory functions in connection with the construction of some of the private projects but almost none where governmental agencies were involved.

The government contracts required respondent to produce plans and specifications, copies of which were sent by the governmental agencies to prospective bidders, many of whom were located outside Virginia and the District of Columbia. These plans consisted of drawings and designs and were supplemented by explanatory specifi-

cations which contained the information necessary for estimating cost and guiding contractors in bidding and construction. They were prepared under the supervision of respondent's professional members and associates by draftsmen exployed by respondent. In many cases, the information necessary to prepare the plans and specifications was gathered on the site of the projects by fieldmen employed by respondent. These fieldmen included surveyors, transitmen and chainmen who often traveled across state lines to get to the projects. On one project, fieldmen from the Washington office went daily to nearby Maryland to gather data for a sewerage project. In addition to the draftsmen and fieldmen, various clerks and stenographers employed by respondent participated in the mechanical preparation of these plans and specifications.

The parties are agreed that respondent's professional employees—architects and engineers—are exempted from the coverage of the Act by § 13 (a)(1), 29 U. S. C. § 213 (a)(1).[4] Therefore, the Secretary's injunction action is directed at some fifty employees mentioned above: draftsmen, fieldmen, clerks and stenographers. The stenographers, in addition to their connection with the plans and specifications, manned respondent's private phone wire connecting the Norfolk and Washington offices, prepared and typed substantial numbers of letters concerning the described projects which were mailed to persons in places other than Virginia and the District of Columbia, and prepared payrolls in the Virginia office for employees at the Washington and Norfolk locations.

---

[4] The section provides:

"The provisions of sections 206 and 207 of [this] title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator) . . . ."

The question at issue is whether these non-professional employees are "engaged in commerce" as that term is used in §§ 6 and 7 of the Act, 29 U. S. C. §§ 206, 207.[5] To determine the answer to this question, we focus on the activities of the employees and not on the business of the employer. *Kirschbaum Co.* v. *Walling*, 316 U. S. 517; *Walling* v. *Jacksonville Paper Co.*, 317 U. S. 564; *Mitchell* v. *Vollmer & Co.*, 349 U. S. 427. We start with the premise that Congress, by excluding from the Act's coverage employees whose activities merely "affect commerce," indicated its intent not to make the scope of the Act coextensive with its power to regulate commerce.[6] *Kirschbaum Co.* v. *Walling, supra; McLeod* v. *Threlkeld*, 319 U. S. 491. However, within the tests of coverage fashioned by Congress, the Act has been construed liberally to apply to the furthest reaches consistent with congressional direction. Thus the Court stated in *Overstreet* v. *North Shore Corp.*, 318 U. S. 125, 128, ". . . the policy of Congressional abnegation with respect to occupations affecting commerce is no reason for narrowly circumscribing the phrase 'engaged in commerce.' "[7]

---

[5] Section 6 provides:

"(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates . . . ."

Section 7 provides:

"(a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

[6] See also the limitations contained in § 3 (j), 29 U. S. C. § 203 (j), concerning the coverage of persons engaged in occupations related to the production of goods for commerce.

[7] See also *Mitchell* v. *Vollmer & Co., supra; Alstate Construction Co.* v. *Durkin*, 345 U. S. 13; *Walling* v. *Jacksonville Paper Co., supra,* at 567.

Where employees' activities have related to interstate instrumentalities or facilities, such as bridges, canals and roads, we have used a practical test to determine whether they are "engaged in commerce." The test is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." *Mitchell* v. *Vollmer & Co., supra,* at 429.[8] Coverage in the instant case must be determined by that test for, as the parties stipulated below, the draftsmen, fieldmen, clerks and stenographers all worked intimately with the plans and specifications prepared by respondent for the repair and construction of various interstate instrumentalities and facilities including air bases, roads, turnpikes, bus terminals, and radio and television installations. In our view, such work is directly and vitally related to the functioning of these facilities because, without the preparation of plans for guidance, the construction could not be effected and the facilities could not function as planned. In our modern, technologically oriented society, the elements which combine to produce a final product are diffuse and variegated. Deciding whether any one element is so directly related to the end product as to be considered vital is sometimes a difficult problem. But plans, drawings and specifications have taken on greater importance as the complexities of design and bidding have increased. Under the circumstances present here, we have no hesitancy in concluding that the preparation of the plans and specifications was directly related to the end products and that the employees whose activities were intimately related to such preparation were "engaged in commerce."

---

[8] See also *Fitzgerald Co.* v. *Pedersen,* 324 U. S. 720; *McLeod* v. *Threlkeld, supra; Walling* v. *Jacksonville Paper Co., supra; Overstreet* v. *North Shore Corp., supra.*

Respondent urges that military bases are not instrumentalities of commerce, but rather of war, and, in addition, that many of the projects involved new construction and hence cannot be considered as existing facilities or instrumentalities of interstate commerce. In answer to respondent's first point, it is sufficient to note that under the Court's reasoning in *Powell* v. *United States Cartridge Co.*, 339 U. S. 497, a facility designed for war may also be an instrumentality of commerce. See *Mitchell* v. *H. B. Zachry Co.*, 127 F. Supp. 377. Here respondent's employees admittedly worked on plans and specifications relating to construction at military air bases. And it is not disputed that these bases are used for interstate commerce, at least to the extent that interstate flights both land at and take off from them, and men, materials, and mail move through them from distant points. Respondent's second objection must be rejected also. Whatever vitality the "new construction" doctrine retains after *Mitchell* v. *Vollmer & Co., supra,* and *Southern Pacific Co.* v. *Gileo,* 351 U. S. 493, 500, it is not applicable here because, as the record shows, many projects involved the repair, extension, or relocation of existing facilities.

Respondent contends that *its* activities are essentially local in nature. But as we stated, Congress deemed the activities of the individual employees, not those of the employer, the controlling factor in determining the proper application of the Act. Here the activities of the employees show clearly that they are "engaged in commerce" and thus are eligible for the protections afforded by the Act.

Although not an issue below and not a matter of disagreement between the parties before this Court, some doubt has arisen whether injunctive relief is proper in this case. Examination of the record reveals that the controversy has been whether the admitted activities of respondent's employees during the period of the complaint

brought them within the Act's coverage. Respondent does not appear ever to have urged that an injunction would be improper if, as a matter of law, its employees were "engaged in commerce." Its position seems correct in light of the specific statutory provision, § 17, 29 U. S. C. § 217, which gives the District Courts jurisdiction to restrain violations of the Act. And the numerous suits brought by the Department of Labor under that section attest to the fact that the commencement of an injunction action, where coverage is in doubt, is not at all unusual. See, e. g., Mitchell v. Vollmer & Co., supra; Walling v. Jacksonville Paper Co., supra; Kirschbaum Co. v. Walling, supra; Mitchell v. Raines, 238 F. 2d 186; Mitchell v. Feinberg, 236 F. 2d 9; Chambers Construction Co. v. Mitchell, 233 F. 2d 717.

The Act sets up four means for enforcement. Section 16 (a), 29 U. S. C. § 216 (a), provides for criminal prosecution of willful violators. Section 16 (b), 29 U. S. C. § 216 (b), gives individual employees rights of 'actions in civil suits to recover unpaid minimum wages, overtime compensation and certain liquidated damages. Section 16 (c), 29 U. S. C. § 216 (c), allows the Secretary of Labor to bring such an action in behalf of such employees provided the suit does not involve "an issue of law which has not been settled finally by the courts." Section 17, 29 U. S. C. § 217, of course, provides for injunctions. Even a cursory examination of these provisions shows that the injunction is the only effective device available to the Secretary when coverage is in doubt and he wishes to establish the availability of the Act to employees not theretofore afforded its protections.

We fail to see what undue burden will be placed on respondent by the issuance of an injunction especially in view of the District Court's suggestion, to which both parties appear to have acquiesced, that if coverage premised on the admitted activities is established, the

parties should have no trouble in deciding which of the employees are covered. In any event, upon proceedings on remand, it will still be within the discretion of the District Court whether or not to issue an injunction. If, for instance, respondent discloses its records, enters a stipulation concerning which employees are covered, and agrees not to violate the Act in the future, the District Court might conclude that an injunction is unnecessary. Compare *Mitchell* v. *Bland,* 241 F. 2d 808, 810, with *Chambers Construction Co.* v. *Mitchell, supra,* at 725.

The judgment is reversed and the case is remanded to the District Court for proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE WHITTAKER, dissenting.

While I am of the view that the evidence may be sufficient to show that some of respondents' employees at some times—namely, fieldmen when traveling interstate in gathering information needed for the preparation of architectural and engineering plans, and construction supervisors when actually supervising the repairing or remodeling of structures used in commerce—are "engaged in commerce," within the meaning of § 7 (a) of the Fair Labor Standards Act, as amended, 29 U. S. C. § 207 (a), I am nevertheless persuaded that the evidence is not sufficient, and does not show conduct sufficiently continuous as to any category of employees, to justify the entry of a general injunction against respondents from, in effect, "violating the law," thus requiring them to live under pain of contempt citation for violation of a general injunctive decree, while others live under the law of the land. I am further persuaded to this conclusion in the knowledge that such of these employees as can show that their particular work at a particular time rendered them "engaged in commerce" have a complete legal remedy

under § 16 (b) of the Act, 29 U. S. C. § 216 (b), to recover overtime compensation plus an additional equal amount, attorneys' fees and costs. As I read its opinion, these are the factors that persuaded the Court of Appeals to affirm the District Court's denial of the prayed injunction, 250 F. 2d 253, 260–261, and for those reasons I would affirm its judgment.

MR. JUSTICE STEWART, dissenting.

With the general principles stated in the Court's opinion there can be no dispute. Their application to the facts of the present case, however, does not lead me to the conclusion reached by the Court. Believing that the Court of Appeals did not err in deciding on which side of the shadowy line between such decisions as *McLeod* v. *Threlkeld,* 319 U. S. 491, and *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564, this case falls, I would affirm the judgment.