**Darlene HARDER, Plaintiff,**

v.

**Claude C. ANDERSON and Joseph C. Seiberlich, individually and as copartners d/b/a Anderson and Seiberlich, Defendants.**

**Civ. No. 3–58–131.**

United States District Court
D. Minnesota,
Third Division.
May 27, 1959.

Robert A. Dworsky, St. Paul, Minn., for plaintiff.

Lee N. Johnson, of Bundlie, Kelley & Maun, St. Paul, Minn., for defendants.

BELL, District Judge.

The defendants are Certified Public Accountants, engaged in the practice of their profession in St. Paul, Minnesota. During all of the times pertinent hereto, they maintained a professional staff of 5 men and 3 female stenographer-clerks, of whom the plaintiff was one. The defendants hold themselves out as experts in the fields of auditing and accounting, and are prepared to perform such services for the public. They are members of the American Institute of Accountants and The Minnesota State Society of Certified Public Accountants. They are licensed to practice their profession by the Minnesota State Board of Accountancy, and are not so licensed by any other state, territory or foreign country.

During the times here involved, the defendants performed their professional services for approximately 141 clients, a substantial number of which were engaged in interstate commerce. In addition, the defendants also gave advice concerning the installation of accounting systems and prepared numerous federal and state income tax returns.

The plaintiff, in the course of her employment, was charged with the responsibility of typing and mailing communications between the defendants and their clients. Such communications consisted of reports and opinions, and tax returns some of which were sent across state lines. In gathering the factual financial data necessary to enable the defendants to give a professional opinion concerning the financial statements of their clients, it was necessary to confirm their clients' accounts receivable, inventories and liabilities payable by use of the United States Mails. The letters requesting confirmation often crossed state lines.

The plaintiff was employed on a regular hourly salary and was not paid wages at one and one-half times the regular rate for hours worked in excess of 40 hours in several of the work weeks during the defendants' busy season. The plaintiff brought this action for payment of overtime wages alleged to be due her;

the defendants deny that the plaintiff is an employee covered by the provisions of the Fair Labor Standards Act of 1938 as amended, 29 U.S.C.A. § 201 et seq.

Of course, it is well established that the work activities of the plaintiff, and not those of the defendant employers, shall be the criterion for determining whether or not an employee may recover in this type of action. Armour & Co. v. Wantock, 1944, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118; Kirschbaum v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. Section 207 of the Act sets forth the only two categories of covered employees with which we are here concerned: (1) those who are "engaged in commerce," and (2) those who are "engaged * * * in the production of goods for commerce." The duties of the plaintiff do not fall within either category.

The plaintiff's alternative argument that she is engaged in the production of goods for commerce is easily disposed of, for the defendants produce no "goods" with which the plaintiff can concern herself. The defendants have no product, they offer only services, their professional opinion. Whether that opinion is communicated by means of a report, or on a tax return, or even orally, it is an expression of a professional opinion. There can be no doubt that an opinion is not within the category of "goods," as that term is used in the Act. The reduction of the defendants' opinion to paper does not turn their services into a saleable commodity. Their opinion has no intrinsic value of its own. Though such opinions may be transmitted to the tax authorities of several states, bankers engaged in interstate commerce and located across state lines, they are nothing more than opinions and they cannot by any stretch of the imagination be transmuted into products, goods, wares, or saleable commodities. McComb v. Turpin, D.C.D.Md.1948, 81 F.Supp. 86; Bozant v. Bank of New York, 2 Cir., 1956, 156 F.2d 787; Sealy v. Mitchell, 5 Cir., 1957, 249 F.2d 327.

It is equally clear that the defendants are not engaged in the production of goods for commerce by reason of the fact that many of their clients are so engaged. The defendants are not employees whose duties consist of internal auditing or keeping the basic books and records of concerns engaged in interstate commerce. See Phillips v. Meeker Cooperative Light & Power Ass'n, 8 Cir., 1946, 158 F.2d 698, affirming D.C.D. Minn.1945, 63 F.Supp. 733; Mitchell v. Kroger Co., 8 Cir., 1957, 248 F.2d 935. Their function is to review the accounting records and systems of their clients, whether engaged in interstate commerce or not, and to express an independent opinion based upon such review. Their functions as professional advisors are divorced from and apart from the motives and objectives of their clients engaged in interstate commerce. Possibly there are situations in which the defendants' services, though not directly related to their clients' interstate commerce, would be vital to the continued operation of such commerce, for it is well known that bankers and other credit lending institutions will base critical conclusions upon the auditing reports and opinions of Certified Public Accountants. It is also apparent that a concern engaged in interstate commerce could be vitally dependent upon the services of a practicing attorney to insure their continued participation in interstate commerce. However, such services even if sometimes vital, are not enough. The requirement of the Act is that the activities must be "*directly* and vitally related to the functioning of an instrumentality or facility of interstate commerce so as to be, in practical effect, a part of it, rather than an isolated local activity," Mitchell v. C. W. Vollmer & Co., 1958, 349 U.S. 427, 75 S.Ct. 860, 862, 99 L.Ed. 1196; Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243, and even if the defendants' services were vital, they are certainly not *directly* related to the functioning of an instru-

mentality or facility of interstate commerce.

In the Lublin case, supra, it was concluded that activities of professional engineers were directly and vitally related to interstate commerce. There, the employers were hired to design, prepare plans for, and supervise the construction of industrial and public buildings. The employers staff of surveyors, fieldmen, draftsmen was constantly in attendance at the worksite and was constantly crossing state lines in furtherance of the objective—the construction of a facility vitally and directly related to interstate commerce. In the Lublin case, the Supreme Court cited with approval the case of Mitchell v. Brown Engineering Co., 8 Cir., 1955, 224 F.2d 359, 364, where it was observed that to find no control over the work of contractors by such engineers would be to "turn away from realities and practical considerations." In the instant case it would be equally unrealistic to find the defendants' activities constituted a vital and direct part of their clients' activities. The defendants did not keep accounts or records for their clients engaged in interstate commerce, nor did they supervise or control any employees of such clients. There was a service performed with respect to records and accounts already compiled by their interstate clients. Such services performed by locally licensed and locally controlled professional persons at the request of business concerns or individuals do not directly involve the performer in the activities of his client. The defendants cannot be said to be directly involved in the practice of medicine because they have physician clients; similarly the defendants are not engaged in manufacturing and distributing goods in interstate commerce.

The issue of the relation of the defendants' activities to those of their clients are further emphasized by the character of defendants' professional obligations. As members of the American Institute of Accountants and The Minnesota Society of Certified Public Accountants, the defendants are bound to observe the rules of ethical practice as promulgated by those societies. As such the defendants may not share or participate with laity in any manner in the fees of professional work; they may not engage in any business or occupation incompatible or inconsistent with the practice of the profession of certified public accountancy; they may not solicit for clients, directly or indirectly; they may not charge any fee contingent upon the result obtained except in federal or state income tax matters; they may not practice their profession in corporate form; they may not submit a competitive bid for a professional engagement; and they may not express an opinion on the financial statement of any enterprise if they own a financial interest therein which is either a substantial portion of the capital of such enterprise or of their own personal fortune. See Statement of Rules of Professional Conduct, American Institute of Certified Public Accountants (1956). The defendants' license to practice their profession is subject to cancellation upon proof of bad moral character, dishonesty, conviction of a crime, professional incompetency, or unprofessional conduct. See M.S.A. § 326.33.

Therefore, the defendants must be independent from the activities of their clients, in order to uphold the standards of practice in their profession. Any breach of these professional standards might subject the defendants to liability for damages. This rule of independence is recognized by at least one federal regulatory agency as an absolute requirement for Certified Public Accountants that practice before it. See, Securities and Exchange Commission Regulations S–X, Rule 2.01(b) and (c).

Since the defendants produce no goods, it cannot be said that plaintiff was engaged in the production of goods for commerce. The rules of professional conduct of the defendants' profession defines the basic relation between the Certified Public Accountant and his client as one of complete independence. The defendants are members of this organized professional society and are bound by law

to observe such well-established rules of professional conduct. It must be assumed that the defendants conform to their professional codes, for the record contains no evidence to the contrary. Defendants' services are clearly not directly related to the business or personal activities of each of their 141 clients. It follows that the plaintiff is not engaged in the production of goods for commerce.

The major category under which plaintiff seeks to bring herself is that of "engagement in commerce." Section 203 (b) of the Act defines "commerce" as meaning "trade, commerce, transportation, transmission, or communication among the several States * * *" The entire scope of the defendants' operations reveal only one activity that could fall within the statutory terms; that of use of the United States Mails across state boundaries. Defendants have stipulated that if any part of their activities consisted of engagement in commerce, then such activities were performed by the plaintiff. This issue resolves itself into the simple question of whether use of the mails constitutes engagement in commerce.

The mere use of the United States Mails does not constitute engagement in commerce. It would be impossible to find a modern business of whatever size that does not use the mails to a considerable extent; i. e., invoicing, rendering of statements, collection of accounts, banking and many other facets of the day to day operations of such a business are absolutely dependent upon use of the mails. If use of the mails constitutes engagement in commerce then every local enterprise of the smallest scope is engaged in commerce and the owners and proprietors of those enterprises must consider their employees covered under the Act. It is clear that Congress did not extend the coverage of the Act so far. See, e. g. Kirschbaum v. Walling, supra. In considering this point, Judge Learned Hand stated in speaking for the Court in Bozant v. Bank of New York, supra, 156 F.2d at page 789:

" * * * Indeed, were it otherwise, the Act would sweep into its maw every business, however local, which manufactured nothing whatever, merely because it was carried on by correspondence, which is the case with all business. * * * "

In the case of Kelly v. Ford, Bacon & Davis, 3 Cir., 1946, 162 F.2d 555, 561, the Court found that an employee of a concern (which was clearly partially engaged in interstate commerce) whose duties consisted of preparation and mailing of letters and work reports was not covered by the Act. The Court found that the "gap between primary intrastate operation and the collateral interstate commerce feature was not bridged for any practical purposes by the processing and mailing of the orders and letters." The case now under consideration involves no partial engagement in interstate commerce; there is no part of defendants' activities that constitutes interstate commerce. It follows that use of the mails cannot be used as a crutch to extend the coverage of the Act to employees of intrastate enterprises.

The reasons set forth above with respect to the "production of goods for commerce" argument are equally valid in finding that the defendants are not engaged in interstate commerce because of the fact that many of their clients are so occupied.

Judgment will be entered for the defendants.