James P. MITCHELL, Secretary of the United States Department of Labor, Plaintiff,

v.

NOLLA, GALIB & COMPAÑIA, a partnership, Defendant.

Civ. No. 310–59.

United States District Court
D. Puerto Rico,
San Juan Division.
June 30, 1960.

Kenneth P. Montgomery, U. S. Dept. of Labor, Jose E. Bosch Roque, San Juan, P. R., for plaintiff.

Luis Blanco Lugo, San Juan, P. R., for defendant.

RUIZ-NAZARIO, District Judge.

Plaintiff has failed to convince the court that the employees of defendant working on the construction project contract NBy-10132, which is the only project remaining at issue herein, are engaged in commerce and that he, therefore, is entitled to the injunctive relief prayed for in the complaint.

The issue under consideration herein has been submitted to the court for decision under the terms of the stipulation filed by the parties on November 25, 1959 and approved by the court on the same date, and briefs to be filed thereafter.

The facts resulting from said stipulation entirely fail to support the issue of coverage.

The facilities being constructed under said project do not appear from said stipulation, to be facilities used or to be used in commerce, but merely military facilities exclusively destined to be used in the national defense by the Government of the United States of America through the different branches of its armed forces.

Plaintiff has failed to cite any case holding that any such facilities have ever been considered as being used in commerce.

The only cases cited by plaintiff in which military installations were involved are: Laudadio v. White Construction Co., 2 Cir., 163 F.2d 383; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334; and Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017.

But the factual situations involved in these three cases are inapposite to that resulting from the facts stipulated herein.

In Laudadio v. White Construction Co., supra [163 F.2d 385], the work was being performed in Floyd Bennett Field, which had been a private airfield and an instrumentality of commerce. The Navy took it over for a naval air station. Although the work was being done after the Navy took it over, the court acted on the "assumed premise that Floyd Bennett Field *continued to* be an instrumentality of commerce after the Navy

took it over for a naval air station." (Emphasis supplied). The court further stated "The record is entirely barren of any evidence as to what use was made of the Field during the time the defendants were performing their contract with the Navy. If the Field were used solely to train air personnel of the Navy, it would seem to be an *instrumentality of war rather than an instrumentality of commerce*". Citing Divins v. Hazeltine Electronics Corp., 2 Cir., 163 F.2d 100. (Emphasis supplied). Then it was added "For purposes of decision we shall assume that to some extent interstate commerce was carried on at the Field after the Navy took it over."

In Ritch v. Puget Sound Bridge & Dredging Co., supra, the work which was being performed was the dredging of two channels in the harbor of the Bremerton Navy Yard in the navigable waters of Puget Sound, *extensively used for interstate commerce*. Commercial transportation was extensively conducted there not only by private vessels but also by Navy vessels.

And Powell v. United States Cartridge Co., supra [339 U.S. 497, 70 S.Ct. 759], only dealt with the "production of goods for commerce" feature of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and not with the "engaged in commerce" feature of the act with which this action exclusively deals.

Plaintiff in his memorandum has asked the court to take judicial notice of certain facts which, in his opinion, will lend support to his contention that the facilities involved herein although being built and expanded for the purposes of national defense eventually or in emergencies they could be used in commerce.

Even if the court took judicial notice of all such facts plaintiff's position would not be better.

The court has to take the facts as they have been stipulated by the parties. It cannot recur to conjecture or speculation to enhance their scope.

The possibility may exist that in an emergency or in now unforeseen situations the facilities here in question could be sometime in the future used to a limited extent for some commercial purpose. But this does not authorize the court to rate those facilities at present and for the purposes of this action as being used or constructed for use in commerce.

The court believes that Congress intended that the Fair Labor Standards Act apply only in *presente* and not in *futuro*. In other words, that in order that any work can be considered within the coverage of the act the facilities on which such work is being performed must be actually used in commerce at the time said work is being performed, or actually intended to be used, in commerce, thereafter. But if such facilities are not being actually used in commerce, or they are not actually intended to be so used, thereafter, the work shall not be considered as falling within the coverage of the act, even if the possibility of their limited use in commerce, at some future date, either because of an emergency or any unforeseeable event, could be surmised or conjectured.

In Divins v. Hazeltine Electronics Corporation, 2 Cir., 163 F.2d 100, 102, the court, with reference to war vessels, stated the following:

"In any realistic use of words such vessels would seem to be instrumentalities of war, not of commerce. It is true that warships transport men, munitions, food for crew and troops, and occasionally, perhaps, supplies for civilians; and they may at times transmit radio messages for civilians. See Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334, 335. This literally satisfies the statutory definition of commerce,[3] but such transportation or communication is merely incidental to the war purpose for which the vessel is actually being used. To hold that workmen who repair aircraft carriers, battleships, submarines or other types of vessels used as weapons of war are 'engaged in commerce,' stretches the quoted words, elastic though they be, beyond, all reasonable limits. The test, as stated in

McLeod v. Threlkeld, 319 U.S. 491, 497, 69 S.Ct. 1248, 1251, 87 L.Ed. 1538, 'is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it.' "

 Under no stretch of the imagination can, therefore, be it said that the employees of defendant working in the project at issue here are engaged in commerce within the purview and intent of the act.

The complaint must be dismissed.