Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

W. HARLEY MILLER, INCORPORATED, a corporation, Defendant.

Civ. A. No. 232–M.

United States District Court
N. D. West Virginia.

May 25, 1961.

Charles Donahue, Sol., Washington, D. C., Jeter S. Ray, Regional Atty., Percy H. Green, Atty., United States Department of Labor, Office of Solicitor, Nashville,

Tenn., Robert E. Maxwell, U. S. Atty., Northern District of West Virginia, Fairmont, W. Va., for plaintiff.

Lacy I. Rice and Lacy I. Rice, Jr., Martinsburg, W. Va., for defendant.

CHARLES F. PAUL, District Judge.

Plaintiff brought this action to recover unpaid weekly overtime compensation alleged to be due nine former employees of the defendant under the provisions of the Fair Labor Standards Act of 1938 (29 U.S.C.A. § 201 et seq.) hereinafter referred to as the Act.

Both parties have moved for summary judgment under Rule 56(a) and (b), 28 U.S.C.A., based on the pleadings, stipulations elicited in pre-trial conference, and the supporting affidavits filed with those motions.

In 1955 the City of Martinsburg was the owner of a tract of land on which was located runways and buildings used as a municipal airport. The land and facilities were leased to a private individual for operation as an airport. The West Virginia Air National Guard maintained a fighter squadron at the airport, utilizing, in connection with its operations, leased space in a privately owned hangar-type building at the airport known as the "Butler Building." In 1956 the National Guard was desirous of increasing the size of its operations at its base at the Martinsburg Municipal Airport and, to facilitate this purpose, the City of Martinsburg purchased other land adjacent to the airport and leased it at a nominal rental to the West Virginia Air National Guard. A contract was awarded the defendant in September, 1956, to do the construction work on a hangar building, supply building, motor service shop, and fuel storage facility on this leased land for the exclusive use of the West Virginia Air National Guard. A contract was let to another contractor for the construction of aprons and taxiways connecting the hangar building to the runways of the airport, and this work was completed before the defendant had completed its work. The nine employees concerned were engaged in the defend-

ant's construction work and defendant has admitted that each of them was employed more than forty hours in some of the weeks during the construction period and that they were not paid weekly overtime at the rate provided by the Act. Upon completion of the construction work in the fall of 1958 the Air National Guard moved into its new facilities.

Defendant claims that the work was not subject to the provisions of the Act upon the following grounds:

1. Since the facilities were for the exclusive use of the West Virginia Air National Guard, the admitted interstate commerce features of the civilian use of the airport are of no importance in the case, and we should look only to the activities of the West Virginia Air National Guard in determining whether or not the work was upon an instrumentality of commerce within the meaning of the Act. It is the defendant's position that the West Virginia Air National Guard is an instrumentality of war, not of commerce, and that the construction work is not subject to the Act.

2. Even if the construction work was upon a facility for or instrumentality of commerce, the defendant's contract was for "new construction" and exempt from the provisions of the Act.

3. The circumstances of the case present an issue of law which has not been finally settled by the courts and, by virtue of the provisions of the Act (29 U.S.C.A. § 216), the plaintiff has no authority to sue in respect thereto.

Except with reference to the operation of the control tower, hereinafter mentioned, I will accept (in view of the stipulation of the exclusivity of the National Guard use of the facilities) the defendant's contention that the Air National Guard activities contribute nothing to the civilian commerce of the airport, and will consider the first contention of the defendant in that light.

Defendant's principal reliance is upon the case of Mitchell v. Nolla, Galib & Compania, D.C.Puerto Rico 1960, 184 F. Supp. 919, which involved construction projects on a military airport. The case was considered upon stipulations of fact which are not detailed in the opinion, and the court possibly states sound law when (at page 920) it says: "The facilities being constructed under said project do not appear from said stipulation, to be facilities used or to be used in commerce, but merely military facilities *exclusively* destined to be used in the national defense by the Government of the United States of America through the different branches of its armed forces." (Emphasis added.) The defendant also cites the case of Mitchell v. Five Borough Construction Company (14 W.H. Cases 720, 1960), decided by the same district judge on the authority of his decision in the Nolla case.

It has been abundantly settled that an instrumentality of war is not, solely by reason of being such, excluded from being an instrumentality of commerce. Mitchell v. Lublin, McGaughy & Associates, 1958, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243; Mitchell v. Empire Gas Engineering Co., 5 Cir., 1958, 256 F.2d 781; Mitchell v. H. B. Zachry Co., D.C.N.M.1955, 127 F.Supp. 377; Mitchell v. Preskitt, 14 W.H.Cases 718 (N.D. Fla.1960); Laudadio v. White Construction Co., 2 Cir., 1947, 163 F.2d 383.

It behooves us then to look at just what the Air National Guard did and does at the Martinsburg Municipal Airport. That airport is located approximately 4 air miles from the Virginia state line and 12 air miles from the Maryland state line. Since before the completion of the construction work here involved the West Virginia Air National Guard has conducted, among others, the following activities:

1. Operated flights for the interstate transportation of both military personnel and civilian state officials between points in and outside of the state of West Virginia.

2. Transported materials from the Martinsburg base to bases in other states, and from those other bases to the Martinsburg base.

3. Conducted training flights across state lines and interstate flights for the physical examinations of pilots and other personnel, and interstate flights to take National Guardsmen to summer camps (approximately half of them go in commercial planes).

4. Operates a control tower at the airport for the controlling of all landings and take-offs at the airport, both military and civilian. In this process the control tower receives and transmits radio messages from and to pilots in the air space above Virginia and Maryland, as well as West Virginia.

■ The sum of these activities far exceeds the quantum of activities connected with commerce present in any of the cases hereinbefore cited, and I must hold that they satisfy the Act's definition of "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."

■ Turning now to the second contention of the defendant, based upon the so-called "new construction" doctrine, we find the defendant relying upon the rule first enunciated by the courts in considering the applicability of the F.E.L.A., 45 U.S.C.A. § 51 et seq., to the construction of new facilities as "commerce" within the meaning of that Act. In some cases the doctrine developed under the F.E.L.A. was applied to exclude new construction activities from the provisions of the Fair Labor Standards Act (see Scholl v. McWilliams Dredging Co., 2 Cir., 1948, 169 F.2d 729). In 1955 the Supreme Court, in Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L. Ed. 1196, sharply criticizes the restrictive effect upon the broad purposes of the Fair Labor Standards Act of the application of the new construction doctrine. While there is some controversy as to whether Vollmer effectively abolishes the new construction doctrine as applied to Fair Labor Standards Act cases it is interesting to note that the Supreme Court itself, in its opinion in Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753, so reads the Vollmer case.

Without belaboring the state of the law as to the new construction doctrine, the defendant's contention in this respect must fail for another and simpler reason. The construction work here involved was not new. It was the relocation and enlargement of the existing facilities which the West Virginia Air National Guard had adjacent to the Martinsburg airport. While the new facilities were quite some distance away from the previously used Butler Building, this fact is of no significance. In Mitchell v. Hodges Contracting Co., 5 Cir., 1956, 238 F.2d 380, 381, the construction of a new radio-television building a mile from the old radio station was held to be not new construction, and in Bennett v. V. P. Loftis Co., 4 Cir., 1948, 167 F.2d 286, the construction of a new highway bridge to replace an old bridge located 200 feet away was similarly held to be a replacement and not new construction. In accord are: Mitchell v. Empire Gas Engineering Co., supra, and Archer v. Brown & Root, Inc., 5 Cir., 1957, 241 F.2d 663.

The third contention of the defendant can be summarily disposed of. The comment of the Fourth Circuit Court of Appeals in the recent case of Mitchell v. Emala & Associates, Inc., 274 F.2d 781, is peculiarly applicable here. In that case the court (at page 783) said: "The distinctions emphasized by the defendant appear to us not legally significant, but present merely incidental factual variations." The authorities hereinbefore cited clearly indicate that the questions here involved have been subject to prior judicial examination and that they serve as precedents here even though there are factual variations.

The motion for summary judgment for the plaintiff may be granted and judgment awarded in the stipulated amount of $542.10, to be distributed among the nine former employees in accordance with the stipulation.

Plaintiff's counsel may submit a form of order in compliance with this opinion.