T. N. TULLIS

v.

Seamour SHAVIN, Individually and d/b/a Save Supply Company.

Civ. A. No. 3832.

United States District Court
E. D. Tennessee, S. D.

April 11, 1963.

Van Cleave & Hatfield, Chattanooga, Tenn., for plaintiff.

Claunch, Shumacker & Thompson, Chattanooga, Tenn., for defendant.

FRANK W. WILSON, District Judge.

This is an action under the Fair Labor Standards Act. The plaintiff seeks to recover minimum wages in accordance with the Act, together with penalty and attorney fees. The defendant denies that the plaintiff was engaged in covered employment and further claims that the plaintiff was in any event employed as an outside salesman upon a commission basis and therefore exempt under Section 541.5 of the Regulations from the minimum wage requirements. A trial by the Court without a jury was held upon April 4, 1963. The following will constitute the Court's findings of fact and conclusions of law in this case.

By stipulation of the parties, it is agreed that the defendant was engaged in the business of selling Shell Homes during the periods material to this lawsuit, namely from August 1960 through March of 1961. The principal place of business of the defendant was upon Ringgold Road in Chattanooga, Tennessee. It is further agreed that the sales area of the defendant included Tennessee, North Georgia and North Alabama.

It appears undisputed in the record that the plaintiff was employed by the defendant upon August 14, 1960. The plaintiff was to assist in the sale of Shell Homes for the defendant and was to be paid by commissions only. It is undisputed that the plaintiff was to be paid a commission of 4% upon all sales that he made. In addition, it is contended by the plaintiff and denied by the defendant that the plaintiff was to receive an override commission of 1% upon the sales of other salesmen to be employed by the defendant. No finding in this regard is material to the issues of this lawsuit, however, as no other salesmen were ever employed and no issue ever arose over payment of a 1% override commission. It did later develop that the plaintiff was paid a 2% commission upon a sale which he originated but did not close. But in any event it is undisputed that the plaintiff was to be paid solely upon a commission basis and the only pay he received was upon this basis.

There is a dispute in the record as to what the understanding of the parties was with respect to the duties of the plaintiff. It appears that the defendant had erected a model Shell Home for demonstration and sales purposes at its principal place of business upon Ringgold Road. It further appears that a second model Shell Home was erected by the defendant in the Tiftonia section of Chattanooga, at some distance from the principal office. This model home was also for demonstration and sales purposes and it was in the process of construction at the time the plaintiff was hired, being completed within a few weeks thereafter. The plaintiff contends that the understanding was that he should remain at the model Shell Home located in Tiftonia, maintain it, demonstrate it to visitors, and make sales contacts there, referring any leads to other salesmen or to the Home Office. The defendant contends that the understanding was that the plaintiff should be employed as an outside salesman to contact potential customers in the field by going to the potential customers, and to use the model homes both at the main office and at Tiftonia only for the purpose of making demonstrations or obtaining sales leads from inquiries left at the models by visitors.

Although a dispute may have existed as to what the parties understood were the duties of the plaintiff, there is no dispute in the record as to what the plaintiff did. It is undisputed that from the date of his employment upon August 14, 1960 until the plaintiff quit upon March 18, 1961, the plaintiff did remain at the model home at Tiftonia. Nor is it disputed but that the defendant was aware of this and did nothing about it more than to remonstrate with the plaintiff about not getting out into the field. It appears, and the Court so finds, that the plaintiff remained at the model home at Tiftonia regularly during week days and on Sunday afternoon for an average of 35 hours per week during the period from August 14, 1960 until March 18, 1961. One room of this Shell Home was enclosed and a table and chairs placed there by the defendant. In December an unlisted telephone was installed for use in calling the Home Office.

It further appears undisputed that during this entire period the plaintiff did little other than remain in the model home. He did not close any sales during this period. He did develop two contacts which he referred to Mr. Palmer, the Sales Manager for the plaintiff, and which Mr. Palmer pursued and closed. The first of such sales was in September and the plaintiff was paid a full 4% commission upon this sale. The second sale was in November and the plaintiff was paid a 2% commission upon this sale. The sum of $194.52 received as commission from these two sales was the total compensation received by the plaintiff during the period of his employment from August 14, 1960 through March 18, 1961. One of these sales was to a customer residing in Flat Rock, Alabama. The other was to a customer residing in Rising Fawn, Georgia. The contracts of sale were for construction of a Shell Home in Flat Rock, Alabama and Rising Fawn, Georgia respectively. As reflected by the record, however, the activities actually performed by the plaintiff consisted almost wholly of acting as custodian of the defendant's Shell Home and

remaining available upon the premises during the day to such visitors or prospective customers as might come in.

Upon March 18, 1961 the plaintiff quit his employment with the defendant. Although there is some difference in the testimony as to why he quit, it is undisputed that he did quit on this date. It appears that he quit when a woman was employed on a salary by the defendant to remain at the Shell Home in Tiftonia on a part-time basis.

As stated above, there are two legal issues raised by the defendant in this case. It is first contended that the plaintiff was not engaged in commerce so as to come within the coverage of the Fair Labor Standards Act. It is next contended that the plaintiff would in any event be exempt under the provisions of the Act excepting "outside salesmen" from the minimum wage and overtime provisions of the Act.

■■ Turning first to a consideration of whether the plaintiff was "engaged in commerce" so as to come within the Act, it is clear that it is the nature of the employee's employment or activities, and not the character of the employer's business, which is the test of whether the employee is engaged in commerce within the meaning of the Act. Mitchell v. Lubin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L. Ed.2d 243. In considering the employee's employment, the test is not whether the employee's activities affect or directly relate to interstate commerce, but whether they are actually in or so closely related to the movement of commerce as to be a part of it. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. If a substantial part of the employee's activities relates to goods whose movements in the channels of interstate commerce is established, he is covered by the Act. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460.

■ In view of the fact that the activities actually performed by the plaintiff related almost wholly to acting as custodian and remaining available to

visitors to the defendant's model Shell Home, matters that were neither in interstate commerce nor so closely related to the movement of interstate commerce as to be a part of it, it is the opinion of the Court that the plaintiff was not so engaged in commerce as to come within the Fair Labor Standards Act. The portion of the plaintiff's activities devoted to the developing of two leads that ultimately led to the sale of two Shell Homes for construction in other states constituted such a small portion of his total activities as not to be significant in the light of his total activities and employment.

In view of the above holding of the Court, it is not necessary to consider the issue as to whether the plaintiff was or was not an outside salesman in accordance with the provisions of the Act and the regulations issued thereunder.

The plaintiff's suit will be dismissed at the cost of the plaintiff. An Order will enter accordingly.