James P. MITCHELL, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

INDEPENDENT STAVE COMPANY,
Inc., a corporation, and James
E. Boswell, Defendants.

No. 1518.

United States District Court
W. D. Missouri, S. D.

Dec. 22, 1958.

See also, 159 F.Supp. 829.

Harper Barnes, Regional Atty., John Weiss, Atty., Kansas City, Mo., and Stuart Rothman, Solicitor, U. S. Dept. of Labor, Washington, D. C., for plaintiff.

Donnelly & Donnelly, Lebanon, Mo., for defendant.

R. JASPER SMITH, District Judge.

This is an action instituted by the Secretary of Labor, United States Department of Labor, against Independent Stave Company, Inc., a corporation, and James E. Boswell, as the president, principal stockholder and officer primarily responsible for employment and wage practices, to enjoin them from violating the provisions of Sections 15(a) (1), (2) and (5) of the Fair Labor Standards Act of 1938, as amended. Title 29 U.S.C.A. §§ 201–219. Jurisdiction is admitted, and defendants concede that they and their employees are engaged in the production of goods for interstate commerce. This action is to require defendants properly to compensate certain employees for their overtime work, and to maintain and keep accurate and true records of hours worked.

Of the group of employees where it is contended that defendants have failed to comply with the overtime provisions of Section 7(a) of the Act, four types of employees must be considered. The first type concerns itself with so-called bona fide guaranteed wage contracts, involving employees Wester and Steele. The second relates to stave jointer men. The third deals with production and maintenance work as performed by hourly paid

working foremen, and the determination of whether or not their work comes within the meaning of Section 7(f) (1) and (2) of the Act. The last involves the question of whether or not certain employees are exempt as executives under Section 13(a) (1) of the Act.

## I

Lloyd Wester and Frank Steele were paid a fixed weekly salary regardless of the hours worked. Wester was engaged in general maintenance. Steele was a fireman, janitor and night-watchman with some supervisory authority over other men doing similar work on different shifts. There is dispute as to the extent of the time spent by each of the employees, but it is sufficient to say that the evidence clearly demonstrated both of them worked in excess of forty hours and that the salary was the same regardless of the number of hours worked.

██ Generally, where an employee is paid a fixed salary for work weeks of irregular length, his "regular rate" for the purpose of Section 7 must be computed by dividing the weekly salary by the hours actually worked in that week. One-half this rate must be paid for all hours worked in excess of forty in that week. See Overnight Motor Transp. Co. v. Missel, 1942, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. Section 7(e) permits an exception to this method of payment of overtime if certain statutory criteria are met. First, the employee must be employed pursuant to a bona fide individual contract; second, the employee's duties must necessitate irregular hours; third, the contract must specify a regular rate (i. e., an hourly rate) and provide for compensation at not less than one and one-half such rate for all hours worked in excess of forty in any work week; and fourth, the contract must provide a weekly guarantee for not more than sixty hours based on the specified regular rate, so that work performed in excess of sixty hours must actually be paid for at one and one-half times the specified regular rate.

It is apparent that the Wester and Steele employment agreements have failed to meet all of the statutory criteria outlined. First, I find no bona fide individual contract. While it is not necessary that the contract be in writing, the requirements enumerated are so strict that it is difficult to see how full and effective compliance can be obtained without some sort of written memorandum clearly understood by both parties. No such memorandum and no such clear understanding existed here.

It is contended by plaintiff that the second criterion, i. e., that the employee's duties must necessitate irregular hours, is defeated by the fact that the only irregularity for either of these employees is in overtime hours and that in no instance did these employees work less than a forty hour week. It is urged that under the rules which control us irregularity is not met by proof of overtime hours alone. I do not agree. I am of the opinion that the evidence in this case demonstrates that both of the employees in fact worked irregular hours, and that their duties required it. I am not prepared to subscribe to the philosophy of certain cases (compare Trager v. J. E. Plastics Mfg. Corp., 34 Labor Cases 96, 127 (Par. 71320) (1958)) which hold that where the only "irregular hours" worked were in the overtime hours, and the employee had not worked less than forty hours in every week, the provisions of Section 7(e) could not be invoked.

The employment agreements of Wester and Steele in all other respects have failed to conform with the requirements of Section 7(e). The company's own records indicate the deficiency, since they do not meet the prerequisite of a stated regular rate. Instead, they show seven varying salary rates for Wester from $1.20 to $1.75 per hour, and four for Steele from $1.02 to $1.16 per hour. Walling v. A. H. Belo Corp., 1942, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716; Sikes v. Williams Lumber Co., D.C.E.D. La.1954, 123 F.Supp. 853.

## II

 Stave and heading jointer machine operators, referred to as jointermen, are employed on a combination piece rate and "proof" bonus. The piece rate and bonus are paid on the amount and quality of staves and barrel heads produced. The operation of the jointing machines themselves is from 8:00 a. m. to 12:00 noon and 1:00 p. m. to 5:00 p. m. in the afternoon, but each jointerman must set knife blades in the machines and adjust them for operation of the machines daily. They are paid $1 per hour ($1.11 since January, 1957) for setting and adjusting the knife blades in the jointing machines. Jointermen are allowed twenty minutes each time for this operation and it is required that the blades must be set in the machine and properly adjusted at least twice each day. The operation must be performed during the noon hour, and either before 8:00 a. m. in the morning or after 5:00 p. m. in the evening. From time to time these blades are chipped by nails or other hard objects during the piece work compensation period, and when this happens the new knife blades must be set and adjusted, but the employees are not paid for this time.

At one time in the operation of defendant company, the knife changing and adjusting was done by other employees. At other times while the jointermen were operating on an hourly rate basis, they did their own knife setting and adjusting at the same hourly rate at which they were compensated for jointing. The present system of payment on a piece work basis plus proof bonus for operating the jointing machine, and an hourly rate basis for setting and adjusting the knives, is provided in a collective bargaining agreement which is in effect with defendant company and the union representing the employees. There is no contention that this is not a bona fide collective bargaining agreement.

In practice, the only overtime compensation these jointermen receive is for the knife setting and adjustment. The evidence indicates that forty hours each week normally is spent on jointing. A minimum of three and one-third hours each week is spent on knife setting and adjustment. When the combined time exceeds forty hours, overtime rates are calculated on the hourly rate only, and not on the piece work and proof bonus. Plaintiff contends that at least three of the last three and one-third hours employees normally work in a work week are overtime hours for which their regular rate of pay is at piece work rate and not at the hourly rate. Defendants contend on the other hand that their method of payment here is in accordance with the established, accepted schedules in industry, and that it is so recognized by the labor union contract. Hence they insist they are in compliance with the Act. I must disagree with their conclusion. Before there is compliance with the provisions of Section 7(f) (2) relating to separate schedules of payment for separate kinds of work, there must be an agreement or understanding between the employer and the employee reached before performance of the work, that the amount to be paid may be computed at a rate or rates other than on a straight weekly basis. Here, although the union contract does provide for an hourly rate for knife setting and adjustment, it does not provide for the use of that rate in the computation of overtime, and simply provides that "all hours over forty shall be paid for at the rate of time and one-half."

I am not ruling here that it is impossible, by contract, to provide that overtime is to be computed on the hours worked in excess of certain hours each day. That can be done under certain circumstances, if the contract is precise and specific in its terms. Section 7(d) (5) of the Act; American Law Institute's Publication of March, 1952, on the Federal Wage and Hour Law, p. 138; Conference Report on Fair Labor Standards Amendments of 1949, 81st Congress, First Session, 1949, U.S.Code Cong.Service, pp. 2251, 2260.

This conclusion is reached on the assumption that there are actually **two**

different types of work contemplated by the activities of the jointermen. This contention I rule in favor of defendants, and I predicate it not only on the testimony that is undisputed in the record that it is the practice of the industry to consider this as two different types of work, but also upon the fact that it is so recognized by the collective bargaining agreement itself. It is quite true that an employee's rights under the Act may not be bargained away by a union contract. But where the question of "kinds of work" is in doubt, or subject to proof, the fact that a legitimate collective bargaining agreement recognizes the distinction between two types of work, even though they may be closely related in fact, should be, and is, persuasive on the courts. I therefore conclude that in this activity, and under the record as it exists before me, setting and adjusting of knives is a different kind of work from operating jointer machines. If the provisions of Section 7(f) (2) otherwise are met, and if they qualify as overtime hours under subsections 7(d) (5), 7(d) (6) or 7(d) (7), this method of computation may be used.

I rule, however, that under the presently existing contract, with its simple provision that "all hours over forty shall be paid for at the rate of time and one-half" defendants' present method of payment of overtime is improper under the Act.

### III

■ Certain employees, in the categories of working foremen, were employed on hourly rate bases plus production bonuses which usually amounted to from $10 to $25 per week for each employee.

Overtime was computed on the hourly rate. Although the company records showed a breakdown of straight time and overtime for these employees for the bonuses as well as total hours worked each week, the total bonus paid in overtime weeks was the same before the overtime computation as after. This resulted from the so-called "boosted hours method" used in computing alleged overtime pay. The method of calculation was to take the total actual hours above forty, increase these hours by one-half, add the overtime hours plus the increased one-half to the forty hours, and divide the total into the bonus. This result is the so-called "basic hourly rate" for the bonus, and when applied to the actual aggregate hours, the bonus calculation is the same before and after overtime computation.

Defendants do not deny that the boosted hours method had been used, but claim that production work performed by these employees was different from the maintenance work, and that previously they had been advised by a Wage-Hour Representative that the boosted hours method was permissible. It was shown that in most instances the actual production work was limited to eight hours per day and that most of the actual overtime work represented additional maintenance work, although the evidence is equally clear that substantial portions of maintenance work may have been done during regular production hours in the plant's operation. No separate records for time spent in the so-called production work as distinguished from maintenance work were kept by the company. The records were made to appear to show overtime on the bonus for all hours worked, including both maintenance and production, by use of the "boosted hours" method. There was no evidence of any kind as to any understanding or agreement between the company and the employees that production and maintenance were to be considered, recorded or compensated for as two different kinds of work.

■ It is eminently clear that bonuses must be included in the regular rate in determining overtime. Walling v. Harnischfeger Corp., 1945, 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711; Carleton Screw Products Co. v. Fleming, 8 Cir., 1942, 126 F.2d 537, certiorari denied 1942, 317 U.S. 634, 63 S.Ct. 54, 87 L.Ed. 511; Walling v. Wall Wire Products Co., 6 Cir., 1947, 161 F.2d 470, 471;

Walling v. Richmond Screw Anchor Co., 2 Cir., 1946, 154 F.2d 780. It is equally apparent that the "boosted hours" method of working backwards from a predetermined sum to achieve purported regular and overtime rates and payments is improper, and cannot be used to meet the overtime requirements of the Act. As one witness aptly stated, "overtime must be paid with money and not with arithmetic." See Walling v. Green Head Bit & Supply Co., 10 Cir., 1943, 138 F.2d 453; Watkins v. Hudson Coal Company, 3 Cir., 1945, 151 F.2d 311. I therefore rule that the method used by defendants in compensating hourly paid working foremen is in violation of the Act. There is insufficient evidence to establish that production and maintenance work of these employees constitutes two kinds of work. Even if it does defendants have still violated the overtime requirements of the Act. Overtime must be paid at the rate applicable to such work on all hours worked after the first forty, in the absence of a precise contract to the contrary as mentioned in the case of the jointermen.

## IV

██ Frank Doerr and J. B. Hollabaugh were described as foremen of the rough stave and finishing departments respectively. Doerr was paid $60.08 each week. He was also paid a bonus which was broken down on the "boosted hours" method. During certain portions of Doerr's working time, he bought bolts, and a major controversy is whether or not he spent a sufficient amount of time in supervision of the rough stave department to qualify as an executive and hence exempt under Section 13(a) (1) of the Act. Hollabaugh received $75 each week but a portion of Saturdays and Sundays were spent by him working on machines, in a maintenance capacity.

I am of the opinion that defendants have demonstrated by a "clear preponderance of the evidence" that both Doerr and Hollabaugh are executives within the meaning of Section 13(a) (1) of the

Act. Smith v. Porter, 8 Cir., 1944, 143 F.2d 292, 294; Ralph Knight, Inc. v. Mantel, 8 Cir., 1943, 135 F.2d 514. It is my opinion that the evidence, inadequate as it sometimes is, does show compliance with Part 541.1 of the Regulations, 29 C.F.R. Section 541.1 (1949), 29 U.S.C.A. Appendix, describing the conditions of qualification for an executive employee.

## V

Plaintiff has charged failure to comply with the record-keeping provision of the Act. It is so apparent that there has been a violation of these requirements as to justify scant review of the evidence to that effect. The record is replete with instances where records of hours worked are kept on an arbitrary or artificial basis, making it impossible from an examination of the records to determine the actual hours worked by any employee within the categories under consideration here. Fictitious hours of work were recorded for Wester, Steele, Doerr and Hollabaugh.

██ Likewise the falsification of bonuses by use of the "boosted hours" method of calculating to show apparent compliance with the overtime provisions is contrary to the record-keeping provisions. Since the Act places the duty of keeping accurate records squarely on the employer, and since the evidence in this case so clearly and definitely shows a failure to comply with these provisions, there can be no question but that in this instance defendant Independent Stave Company has violated the provisions of the Act.

## VI

██ We now come to the question of whether or not, under all the circumstances, an injunction should issue.

The company has had four investigations over a period of many years. The evidence indicates that on each of these occasions attention was directed to existing failures to keep proper records, and to pay the proper overtime. On several occasions, correspondence developed over proper methods of payment of hourly and

# 836

incentive bonus payments, and instructions were given which were not followed. While certain activities of the company might be excused on the theory that it acted in good faith, certain other activities, notably the recording of fictitious hours, and the use of the "boosted hours" method of calculating overtime, may not be disposed of casually on the ground that the company thought it was in compliance. Furthermore, it appears that the violations have not ceased. And as reported in McComb v. Wyandotte Furniture Co., 8 Cir., 1948, 169 F.2d 766, 767: " * * * where a violation still persists at the time of trial and is not inadvertent, an injunction clearly should be granted." Under these circumstances I conclude that an injunction must issue against defendant Independent Stave Company, Inc., a corporation. Chambers Construction Company v. Mitchell, 8 Cir., 1956, 233 F.2d 717.

Similar relief is sought against James E. Boswell, as the president, principal stockholder and officer primarily responsible for employment and wage practices. While Section 3(d) of the Act in its definition of the term "employer" undoubtedly is broad enough under appropriate circumstances to include a principal officer, principal stockholder or officer primarily responsible for employment and wage practices, it is my opinion that before injunction against such an officer is justified on a personal basis, something should be shown demonstrating personal activity above and beyond his normal function as an officer of the company. No such evidence has been developed in this case. Furthermore, an injunction against a corporation is broad enough to prevent the corporation, its officers, agents, and employees from violating the provisions of the Act. This adequately accomplishes the purposes of plaintiff. Personal restraint is not necessary in this case. Helena Glendale Ferry Co. v. Walling, 8 Cir., 1942, 132 F.2d 616. For these reasons, the action is dismissed as to defendant James E. Boswell.

Plaintiff is directed to submit for my approval form of decree in accordance with the views expressed in this memorandum, within fifteen days from the date of this order.

It is so ordered.