WILLIAM H. OTIS v. JOHN H. MATTILA.

160 N. W. (2d) 691.

August 9, 1968—No. 40,981.

*Alfred R. Sundberg,* for appellant.

*Sheridan J. Buckley, Jr.,* for respondent.

Heard before Knutson, C. J., and Otis, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment holding defendant liable for overtime pay, liquidated damages, and attorneys' fees under the Fair Labor Standards Act of 1938, 52 Stat. 1060, et seq., as amended, 29 USCA, § 201, et seq.

Plaintiff, William Otis, received a B. A. degree in accounting from the University of Minnesota. He had 3½ years of general and cost accounting experience prior to his employment with defendant, John Mattila.

Defendant heads a public accounting firm. Plaintiff began work for the firm in May 1965. According to plaintiff, defendant told him when he was hired that he would be paid $500 per month for the normal 40-hour week with overtime pay for the substantial overtime required during the tax

season, January 1 to May 1. This overtime pay was apparently not payable until the tax season was over. Defendant claims he told plaintiff that he would be paid overtime on the basis of a so-called "variable work week" formula under which base hourly pay in any given week is determined by dividing the normal pay by the actual number of hours worked and time over 40 hours is compensated at 1½ times the base hourly pay for that week. As of January 1, 1966, plaintiff's salary was increased to $525 per month.

As contemplated, plaintiff began putting in substantial overtime hours after January 1, 1966. From then until April 30, 1966, he worked 118¾ overtime hours. As agreed, he received only his regular salary during this period.

Plaintiff voluntarily left defendant's employ on May 6, 1966. About a month earlier, he said, he informed defendant orally that he intended to quit. He did not at that time pinpoint the exact date of his departure, but about a week prior to May 6 he told defendant he would leave on that date. Defendant claims that plaintiff gave no notice whatever.

When plaintiff left, he requested his pay, including overtime. Defendant said he could not pay plaintiff until he had time to figure out how much was owed. Plaintiff renewed his demand May 16. In late May he received a check from defendant, dated May 25, for $193.62, which represented overtime gross of $137.58 and regular gross of $102.22. Plaintiff considered the payment inadequate and returned the check to defendant.

Thereafter plaintiff brought this action in the St. Paul municipal court, demanding, in addition to regular pay for part of May, overtime pay for January to April 30 provided in the Fair Labor Standards Act, and the statutory penalty for late payment provided in Minn. St. 181.14. Defendant's answer contended that the check represented the amount owed and asked a setoff or counterclaim for damages allegedly arising out of plaintiff's unsatisfactory work and his failure to complete work in progress May 6.

The case came on for trial before the court on December 27, 1966. On January 5, 1967, the judge issued his findings, conclusions, and order, holding that plaintiff was entitled to $121.20 regular salary and to overtime of $179.91 computed on the variable workweek formula. He also

held that plaintiff was not entitled to penalty payments under § 181.14. Finding that plaintiff's uncompleted work was not worthless and that he did not perform any work in an unbusinesslike manner, the judge further held that defendant was not entitled to any setoff.

Plaintiff moved for amended findings, conclusions, and order. On April 6, 1967, the judge granted this motion, setting aside the prior findings, conclusions, and order for judgment in its entirety. In his amended findings he again found that plaintiff was entitled to regular pay of $121.20. However, finding that plaintiff's overtime work was subject to the Fair Labor Standards Act's requirement that work in excess of 40 hours per week must be compensated at 1½ times the regular hourly rate, he held that, based on an hourly rate of $3.03 per hour for a 40-hour week, plaintiff was entitled to $4.545 per hour for each of his 118¾ hours of overtime, which amounts to $539.71. He held, in addition, that the Act entitled plaintiff to $539.71 liquidated damages and $300 attorneys' fees and that defendant was not entitled to a counterclaim or setoff. Consequently, he ordered judgment against defendant for $1,500.62.

Defendant's appeal from the judgment presents the issue whether the evidence in this case supports the finding that the Fair Labor Standards Act applies. The only other issue is presented by plaintiff's notice of review—whether plaintiff is entitled to the statutory penalty under Minn. St. 181.14.

■ On May 1, 1966, § 7(a) (1) of the Fair Labor Standards Act of 1938, 52 Stat. 1063, as amended, (hereinafter "the Act"), 29 USCA, § 207(a) (1), provided:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed * * *."[1]

---

[1] All references to the Fair Labor Standards Act and to the appropriate administrative provisions compiled under Title 29 of the Code of Federal Regulations apply to provisions as they appeared on May 1, 1966.

Section 3 of the Act, 52 Stat. 1060, as amended, 29 USCA, § 203, defines "commerce":

"As used in this chapter—

* * * * *

"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."

Defendant's initial contention concerning the application of the Act is that plaintiff was never engaged in commerce or in the production of goods for commerce.

There is sufficient evidence to sustain a finding that plaintiff was engaged in commerce during at least some of the weeks from January 1 to April 30. While defendant's business is primarily local, that fact is irrelevant since the Act makes the activities of the individual employee, not those of the employer, the controlling factor. Mitchell v. Lublin, McGaughy & Associates, 358 U. S. 207, 213, 79 S. Ct. 260, 265, 3 L. ed. (2d) 243, 248. Plaintiff here testified that he worked for two of defendant's out-of-state clients, the Shell Lake Clinic and the Shell Lake Hospital, both of Shell Lake, Wisconsin. Plaintiff's time book, introduced into evidence by defendant, indicates that plaintiff worked for one or both of these clients during the weeks of February 14, February 21, February 28, March 14, and March 21.

Plaintiff was thus "engaged in commerce" while working on an account for an out-of-state client. It is to be noted that he was working directly for the out-of-state client, not for an in-state office of an out-of-state client. To use the terminology of § 203(b), he was engaged in commerce "between any State and any place outside thereof." An interpretative bulletin published by the Department of Labor's Wage and Hour Division supports this proposition. 29 CFR (Rev. 1968) § 776.8(b) provides:

"It should be observed that the term 'commerce' is very broadly defined. The definition does not limit the term to transportation, or to the 'commercial' transactions involved in 'trade' * * *.

* * * * *

"The inclusion of the term 'commerce' in the definition of the same

term as used in the act implies that no special or limited meaning is intended; rather, that the scope of the term for purposes of the act is at least as broad as it would be under concepts of 'commerce' established without reference to this definition."

For cases holding that the term "engaged in commerce" is to be given a broad, liberal construction rather than a strained, technical one, see Overstreet v. North Shore Street Corp. 318 U. S. 125, 63 S. Ct. 494, 87 L. ed. 656; Mitchell v. Lublin, McGaughy & Associates, *supra*; Mitchell v. Kroger Co. (8 Cir.) 248 F. (2d) 935.

The next section of the bulletin, 29 CFR (Rev. 1968) § 776.9, continues the definition:

"Under the definitions quoted above, it is clear that the employees who are covered by the wage and hour provisions of the act as employees 'engaged in commerce' are employees doing work involving or related to the movement of persons or things (*whether tangibles or intangibles, and including information and intelligence*) 'among the several States or between any State and any place outside thereof.'" (Italics supplied.)

It seems clear that, whether measured by the expansive scope given 29 USCA, § 203(b), by 29 CFR (Rev. 1968) § 776.8(b), and the cited cases or by the more precise test of 29 CFR § 776.9, the report which defendant sends to its out-of-state clients constitutes "commerce" within the meaning of 29 USCA, § 203(b).

In reaching this conclusion, we are not unmindful that an employee is considered "engaged in commerce" within the meaning of § 207(a) only if a "substantial part" of his work comes within the terms of § 203(b). Walling v. Jacksonville Paper Co. 317 U. S. 564, 572, 63 S. Ct. 332, 337, 87 L. ed. 460, 468. Inconsequential employment in commerce is not enough. However, here the evidence supports a finding that plaintiff's activities on the Shell Lake accounts during the weeks when he worked on those accounts constituted a substantial part of his activities for those weeks. Looking again to his time book, we find that plaintiff devoted two full days to these accounts during the week of February 14, over 1½ days during the week of February 21, 2½ hours during the week of February 28, 5½ hours during the week of March 14, and 2½ hours during the week of

March 21. In Mid-Continent Petroleum Corp. v. Keen (8 Cir.) 157 F. (2d) 310, the court sustained a finding that an employee who had devoted ½ hour per week to qualifying activities devoted a "substantial part" of his time to those activities. Thus it could hardly be said that it was erroneous to conclude that plaintiff's work in commerce for the above weeks was substantial. That part of the trial court's award which applies to the weeks of February 14, 21, 28, March 14, and 21 must therefore be upheld unless one of the exceptions to § 207(a) applies to those weeks. We will defer discussion of whether those exceptions apply until after discussing whether the Act applies to the other weeks from January 1 through April 30.

The overtime provisions of § 207(a) apply "in any workweek" in which the employee is "engaged in commerce." Defendant contends that, even if plaintiff is entitled to overtime under the Act for some of the weeks in question, he is not entitled to such overtime for those weeks in which it has not been shown that he was engaged in commerce.

The general rule applicable to segregation of qualifying from nonqualifying weeks is that once the employee has demonstrated regular or recurrent qualifying work for the time in question, the burden shifts to the employer to prove the segregation of weeks if he seeks such a segregation. 29 CFR (Rev. 1968) § 776.4(b). See, also, Anderson v. Mt. Clemens Pottery Co. 328 U. S. 680, 66 S. Ct. 1187, 90 L. ed. 1515; Wirtz v. First State Abstract & Ins. Co. (8 Cir.) 362 F. (2d) 83.

Here, plaintiff has clearly shown recurrent qualifying activities. The issue is thus whether defendant has adduced sufficient evidence to support a segregation of weeks. In both the Anderson and First State Abstract cases the courts put heavy stress on the employer's failure to produce work records to support a segregation. Here defendant did produce plaintiff's work records. However, those records, in the absence of further proof, do not sustain defendant's claim for segregation. In most of the weeks from January 1 through April 30, plaintiff worked substantial time for Bakery Drivers Local or Joint Councils. The Bakery Drivers Union is affiliated with the Teamsters Union, a large national union many of whose members are employed in the movement of goods in interstate commerce. Thus the union is rather directly involved in interstate commerce.

If plaintiff's employment with the locals and joint councils was directly related to the union's function as a mover of goods and things in the channels of interstate commerce, it would appear that plaintiff was "engaged in commerce" while so employed, and hence that he was within § 207(a). 29 CFR (Rev. 1968) § 776.9; McLeod v. Threlkeld, 319 U. S. 491, 63 S. Ct. 1248, 87 L. ed. 1538. If the work was only indirectly related to that function, it would not qualify under 29 USCA, § 207(a), McLeod v. Threlkeld, *supra*, but, as before noted, the burden of proof here is on defendant, and he has not introduced evidence to show the nature of that work.

Similarly, defendant has not shown that plaintiff was not "engaged in commerce" during those very few weeks in which he was not working on either the Shell Lake accounts or the Bakery Drivers account. It appears in this case that neither party introduced evidence with a particular eye to the rather crucial question of whether plaintiff was "engaged in commerce" for the entire time in question, and the issue must therefore be resolved on what is unfortunately a rather inadequate record. But be that as it may, since the burden of showing segregation is on defendant, it cannot be said that the judge erred in concluding that plaintiff was "engaged in commerce" for the entire period.

Defendant next contends that even if plaintiff was "engaged in commerce" within the meaning of § 207(a), he is still not entitled to the overtime benefits of that provision because certain exceptions to its coverage are applicable.

The first exception allegedly applicable is contained in § 7(e) of the Act, 63 Stat. 446, as amended, 29 USCA, § 207(e),[2] which on May 1, 1966, read:

"No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under subsection (a) of this section if such employee is employed pursuant to a bona fide individual contract * * * if the duties of such employee necessitate irregular hours

---

[2] Congress redesignated this subsection § 7(f) (29 USCA, § 207[f]) September 23, 1966. 80 Stat. 836.

of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in subsection (a) or (b) of section 206 of this title * * * and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified."

Defendant argues that plaintiff's employment came within the terms of this section. But it is clear that the section is inapplicable here. It applies only if the duties "necessitate irregular hours of work." The trial court's findings indicate that the contract of employment contemplated a regular workweek of 40 hours. This finding is supported by plaintiff's testimony and by the actual course of employment. Thus plaintiff's employment did not "necessitate irregular hours of work." The parties contemplated an average 8-hour workday. It is true that plaintiff worked overtime for four months, but even the overtime was on a more or less standardized schedule, and in any event the working hours here did not fluctuate from week to week and thus do not display the irregularity required by § 207(e). 29 CFR (Rev. 1968) § 778.114. The variable work week exception provided in § 207(e) is therefore inapplicable to this case.

Defendant also cites 29 CFR (Rev. 1968) § 778.311, which applies to a flat rate for special jobs performed in overtime hours. This provision is clearly inapplicable here, for plaintiff was admittedly to be paid an hourly rate for overtime hours, and § 778.311 by its terms applies only to jobs in which an employee is paid "without regard to the time actually consumed in performance."

Two other provisions cited by defendant, § 7(d) (7), 63 Stat. 914, as amended, 29 USCA, § 207(d) (7),[3] and its interpretative regulation, 29 CFR (Rev. 1968) § 778.204, are likewise inapplicable. Those provisions exclude certain overtime payments for purposes of determining the hourly rate applicable to the regular hours of employment. Since no such payments were made in this case, the provisions are not here relevant.

---

[3] This provision was redesignated § 7(e) (7) (29 USCA, § 207[e] [7]). 80 Stat. 836.

Defendant's final contention is that § 207(a) does not apply because plaintiff was employed as a professional within the meaning of § 13(a) (1) of the Act, 52 Stat. 1067, as amended, 29 USCA, § 213(a) (1), which provides that § 207 shall not apply with respect to any employee "employed in a bona fide * * * professional" capacity.

29 CFR (Rev. 1968) § 541.300 sets forth the definition of "professional" as used in § 213(a) (1):

"* * * The term 'employee employed in a bona fide * * * professional capacity' in section 13(a) (1) of the Act shall mean any employee:

> \* \* \* \* \*

"(b)  Whose work requires the consistent exercise of discretion and judgment in its performance; and

"(c)  Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time * * *."

The burden of proof respecting exemptions from the Act is upon the employer. Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U. S. 190, 86 S. Ct. 737, 15 L. ed. (2d) 694; Triple "AAA" Co. v. Wirtz (10 Cir.) 378 F. (2d) 884. Plaintiff's uncontested testimony is that he worked as a bookkeeper. Such work does not require the "consistent exercise of discretion and judgment in its performance" and is not "predominantly intellectual and varied in character." Of course, it might well be that plaintiff's description of himself as a bookkeeper did not adequately describe his activities. But the burden of proving the inadequacy of that description is on the defendant, and it is clear on this record that he failed to sustain the burden.

Since all of defendant's contentions concerning the Fair Labor Standards Act lack merit, the judgment is affirmed in so far as it pertains to the Act.

One point relating to the Act remains for discussion. Plaintiff asks that his attorney's fees on appeal be assessed against defendant. That such fees may be awarded is rather well settled. Section 16(b) of the Act, 52

Stat. 1069, as amended, 29 USCA, § 216(b), which awards attorneys' fees to employees in actions brought to recover amounts due under § 206 or 207, has consistently been interpreted as allowing attorneys' fees on appeal to an employee who is successful on appeal. Holtville Alfalfa Mills, Inc. v. Wyatt (9 Cir.) 230 F. (2d) 398; Aaron v. Bay Ridge Operating Co. (2 Cir.) 162 F. (2d) 665; Dumas v. King (8 Cir.)157 F. (2d) 463. Our reading of those cases, however, leads us to the conclusion that the awards of fees on appeal are made as a matter within the discretion of the appellate court rather than as a matter of absolute right. We note that here the trial court awarded liquidated damages under the Act even though such an award is apparently not required in the absence of a bad-faith failure to comply with the Act. Brown v. Dunbar & Sullivan Dredging Co. (2 Cir.) 189 F. (2d) 871. We mention this, not to quarrel with the award of liquidated damages, but simply to point up that the present judgment is liberal in view of what is likely an unwitting failure to comply with legal provisions which, under the circumstances here, are of a decidedly technical nature. Accordingly, we are of the opinion that attorneys' fees should not be allowed on this appeal.

■ The second issue is whether the trial court was correct in concluding that the penalty provision of Minn. St. 181.14 does not apply to this case. That section reads:

"When any such employee, not having a contract for a definite period of service, quits or resigns his employment, the wages or commissions earned and unpaid at the time of such quitting or resignation shall become due and payable within five days thereafter, at the usual place of payment, and any such employer failing or refusing to pay such wages or commissions, after they so become due, upon the demand of such employee, at such place of payment, shall be liable to such employee from the date of such demand for an additional sum equal to the amount of his average daily earnings provided in the contract of employment, for every day, not exceeding 15 days in all, until such payment or other settlement satisfactory to the employee is made; provided, that if any employee having such a contract gives not less than five days' written notice to his employer of his intention to quit such employment, [the wages become due

24 hours after he quits, demand may be made accordingly, and the penalty applies from the date of demand]; provided, that if the employer disputes the amount of wages or commissions claimed by such employee under the provisions of this section * * * and the employer in such case makes a legal tender of the amount which he in good faith claims to be due, he shall not be liable for any sum greater than the amount so tendered and interest thereon at the legal rate, unless, in an action brought in a court having jurisdiction, such employee recovers a greater sum than the amount so tendered with such interest thereon * * *."

Here payment was not made until May 25, 10 days after the request made May 16. Thus, unless § 181.14 is inapplicable for some reason, defendant is liable for a penalty of 10 days' wages.

In his amended findings, the trial judge said that since plaintiff is entitled to recovery under the Act, he is not entitled to the penalty provided by § 181.24.

To the extent that this determination is based on a belief that the Federal law preempts the state law, it is erroneous. The fact that Congress extended its wage and hour provisions only to those directly engaged in interstate commerce rather than, as it might have done, to all those who in some way "affect" that commerce, evidences a congressional intent not to occupy the whole field. Mitchell v. H. B. Zachry Co. 362 U. S. 310, 80 S. Ct. 739, 4 L. ed. (2d) 753. In any event, § 181.14 is consistent with the Federal provisions with which it might be thought to conflict. Section 181.14 is a penalty provision. Chatfield v. Henderson, 252 Minn. 404, 90 N. W. (2d) 227. On the other hand, § 16(b) of the Act, 29 USCA, § 216(b), which provides for liquidated damages equal to the award of regular wages or overtime under §6 or §7 of the Act, is a provision designed to cover the speculative damages which an employee suffers when his wages are withheld, rather than a penalty provision. Brooklyn Sav. Bank v. O'Neil, 324 U. S. 697, 65 S. Ct. 895, 89 L. ed. 1296.

But if the Act does not preclude a penalty under Minn. St. 181.14, what seems to us to be the most reasonable construction of § 181.14 makes it inapplicable where, as here, liquidated damages in excess of the amount which would be assessed as a penalty under § 181.14 are awarded under the Act. Even if the liquidated damages provided by the Act are not penal

in nature, they are similar to the penalty under § 181.14 in that both give the employee a recovery beyond the actual wages due and both prompt the employer to make full and timely payment. Thus an award of liquidated damages fulfills the purpose of § 181.14. Since this is true, an award of a penalty under § 181.14 in addition to liquidated damages under the Act amounts to a double assessment of penalties, which the legislature probably did not intend. To allow such a double assessment would, in fact, create an inequity certainly never intended by the legislature, for it would result in treating employees subject to the Act much more favorably than those not subject to it. Thus the construction of § 181.14 most consistent with the probable legislative intent is that it is inapplicable when an award of liquidated damages is made under the Act which is equal to or in excess of the penalty which would be due under § 181.14. This construction is fortified by the general proposition that § 181.14 is a penal provision which must, accordingly, be strictly construed. Chatfield v. Henderson, *supra*. It perhaps goes without saying that this construction does not prevent imposition of a penalty under § 181.14 where the liquidated damages do not equal the amount of penalty due or where no liquidated damages are awarded even though the employee is subject to the Act.

There being no error in the trial court's refusal to award a penalty under § 181.14, the judgment is affirmed.

Affirmed.