Claire **LORINSER**, Plaintiff and Appellant,

v.

**B & B EMPLOYMENT**, Defendant and Respondent.

**Civ. No. 8664.**

Supreme Court of North Dakota.

Aug. 31, 1971.

Harold A. Halgrimson, Fargo, and Garrity, Cahill, Gunhus, Streed & Grinnell, Moorhead, Minn., for plaintiff and appellant.

,Solberg, Anderson & Stewart, Fargo, for defendant and respondent.

ERICKSTAD, Judge (on reassignment).

The plaintiff Claire Lorinser, whom we shall hereinafter refer to as Mrs. Lorinser, appeals from a judgment of the district court of Cass County, dated May 5, 1970, which dismissed her complaint against B & B Employment, Inc., which we shall hereinafter refer to as B & B company.

In the complaint, Mrs. Lorinser asserts, among other things, that she was an employee of B & B company from May 20, 1968, to October 4, 1968; that during that time she was paid at a rate lower than the federal minimum wage of $1.60 per hour, and that accordingly she is entitled to be paid $1200 as the unpaid portion of her minimum wage, and an additional $1200 as liquidated damages, together with reasonable attorney fees and costs. B & B company's main defense is that the complaint fails to state a claim upon which relief can be granted. Although it also asserted a counterclaim, it abandoned the counterclaim at the trial, so we shall not discuss the counterclaim.

The judgment appealed from resulted from a motion made by B & B company under Rule 41(b) of the North Dakota Rules of Civil Procedure, after both parties had rested and before the case was submitted to the jury, for a dismissal of the plaintiff's complaint upon the ground that B & B company is exempt from the minimum wage requirements of the federal law under Section 213(a) (1) and (a) (2) of Title 29, U.S.C.A.

The pertinent parts of that section of the Fair Labor Standards Act read:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to—

"(1) any employee employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act, except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities); or

"(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, if such establishment—

\* \* \* \* \* \*

"(iv) is in such an enterprise and has an annual dollar volume of sales (exclusive of excise taxes at the retail level which are separately stated) which is less than $250,000.

"A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry;"

The court granted B & B company's motion, believing that it was exempt under § 213(a) (2). No serious argument was made in the lower court and none is made in our court that § 213(a) (1) applies.

The question for us to determine in this appeal is whether B & B company is a "re-tail or service establishment" exempt under § 213(a) (2).

The pertinent part of Section 206, Title 29, U.S.C.A., reads:

"(a) Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

"(1) not less than $1.40 an hour during the first year from the effective date of the Fair Labor Standards Amendments of 1966 and not less than $1.60 an hour thereafter, except as otherwise provided in this section:"

■ Mrs. Lorinser contends that in concluding as it did the trial court failed to give proper weight to the interpretive ruling of the administrator of the Wage and Hour and Public Contracts Divisions of the United States Department of Labor as contained in the Federal Register of October 17, 1967.

The pertinent part of the Register follows:

"Pursuant to the Fair Labor Standards Act of 1938 (29 U.S.C. 201 et seq.), Reorganization Plan No. 6 of 1950 (3 CFR 1949–53 Comp., p. 1004), and Secretary's Order No. 16–67 dated July 21, 1967, I hereby amend 29 CFR Part 779 as set out below.

"The procedural and effective date requirements of Section 4 of the Administrative Procedure Act (5 U.S.C. 553) do not apply as this amendment is concerned solely with interpretive rules. I do not believe such procedure and delay will serve a useful purpose here. Accordingly, this amendment shall become effective upon publication in the FEDERAL REGISTER.

"1. Section 779.317 is amended to read as follows:

"§ 779.317 Partial list of establishments lacking 'retail concept.'

"There are types of establishments in industries where it is not readily apparent whether a retail concept exists and whether or not the exemption can apply. It, therefore, is not possible to give a complete list of the types of establishments that have no retail concept. It is possible, however, to give a partial list of establishments to which the retail concept does not apply. This list is as follows:

\* \* \* \* \* \*

"Employment Agencies (Yunker v. Abbye Employment Agency, Inc., 32 N. Y.S.2d 715 (N.Y.C.Munic.Ct.1942).)" Federal Register, Vol. 22, No. 201, October 17, 1967, page 14327.

In the instant case, Mrs. Lorinser's employment consisted mainly of finding employers who needed temporary employees, and then finding employees for those employers. B & B company's office is situated in Fargo, but Mrs. Lorinser's work necessitated the use of the telephone across state lines into Moorhead and also on occasion required personal visitation on her part with prospective employers in Moorhead.

Commerce is defined as meaning trade, commerce, transportation, transmission, or communication among the several states or between any state and any place outside thereof. Section 203(b), Title 29, U.S.C. A., page 295.

Lest someone question at this point whether B & B company was engaged in commerce within the meaning of the federal Act, we draw attention to and rely upon what was recently said by the Supreme Court of Minnesota pertinent thereto.

In holding that a plaintiff accountant employed by an accounting firm was engaged in "commerce while working on an account for an out-of-state client", the Minnesota Supreme Court said:

"An interpretative bulletin published by the Department of Labor's Wage and Hour Division supports this proposition. 29 CFR (Rev.1968) § 776.8(b) provides:

'It should be observed that the term "commerce" is very broadly defined. The definition does not limit the term to transportation, or to the "commercial" transactions involved in "trade" \* \* \*.

\* \* \* \* \* \*

'The inclusion of the term "commerce" in the definition of the same term as used in the act implies that no special or limited meaning is intended; rather, that the scope of the term for purposes of the act is at least as broad as it would be under concepts of "commerce" established without reference to this definition.'

"For cases holding that the term 'engaged in commerce' is to be given a broad, liberal construction rather than a strained, technical one, see Overstreet v. North Shore Street Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Mitchell v. Lublin, McGaughy & Associates, supra [358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243]; Mitchell v. Kroger Co. (8 Cir.) 248 F.2d 935.

"The next section of the bulletin, 29 CFR (Rev.1968) § 776.9, continues the definition:

'Under the definitions quoted above, it is clear that the employees who are covered by the wage and hour provisions of the act as employees "engaged in commerce" are employees doing work involving or related to the movement of persons or things (*whether tangibles or intangibles, and including information and intelligence*) "among the several States or between any State and any place outside thereof."' (Italics supplied.)"

Otis v. Mattila, 281 Minn. 187, 160 N.W.2d 691, 695 (1968).

Inasmuch as the ruling relied upon by Mrs. Lorinser that an employment agency is not exempt is an interpretive ruling, we think it important to determine what weight the federal courts give to such a ruling.

In 1944 the Supreme Court of the United States, in dealing with the authoritative weight to be given interpretive bulletins, said:

"There is no statutory provision as to what, if any, deference courts should pay to the Administrator's conclusions. And, while we have given them notice, we have had no occasion to try to prescribe their influence. The rulings of this Administrator are not reached as a result of hearing adversary proceedings in which he finds facts from evidence and reaches conclusions of law from findings of fact. They are not, of course, conclusive, even in the cases with which they directly deal, much less in those to which they apply only by analogy. They do not constitute an interpretation of the Act or a standard for judging factual situations which binds a district court's processes, as an authoritative pronouncement of a higher court might do. But the Administrator's policies are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case. They do determine the policy which will guide applications for enforcement by injunction on behalf of the Government. Good administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons. The fact that the Administrator's policies and standards are not reached by trial in adversary form does not mean that they are not entitled to respect. This Court has long given considerable and in some cases decisive weight to Treasury Decisions and to interpretative regulations of the Treasury and of other bodies that were not of adversary origin.

"We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161 at 164, 89 L.Ed. 124 (1944).

The court of appeals for the third circuit has more recently said:

"These interpretive Rulings of the Administrator, while not of a conclusive nature are entitled to substantial weight." Goldberg v. Sorvas, 294 F.2d 841, 847 (1961).

■ It is important also to note that the federal courts in construing the Fair Labor Standards Act have held that the exemptions therein, " * * * are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960).

When Congress amended the Act in 1949 it provided that pre-1949 rulings and interpretations by the administrator should remain in effect unless inconsistent with the statute as amended. 63 Stat. 920, § 16(c), 29 U.S.C.A. § 208 note. Mitchell v. Kentucky Finance Company, 359 U.S. 290, 79 S.Ct. 756, 758, 3 L.Ed.2d 815 (1959).

That pre-1949 rulings and interpretations of the administrator, dating back to 1941,

were to the effect that employment agencies are not exempt has not been disputed by B & B company.

In light of this background, we shall now attempt to decide whether B & B company is exempt from the minimum wage requirements of the Fair Labor Standards Act as amended.

A post-1949 decision of one of the United States district courts in the State of North Carolina, in determining whether a telephone answering service company came within the retail concept of the exemption, discusses two characteristics of a retail establishment. We quote therefrom.

"Two such characteristics are the selling of goods or services to satisfy the needs of the general community and the performance of a function in the business organization of the nation which is at the very end of the stream of distribution. Wirtz v. Modern Trashmoval, Inc., 4 Cir., 323 F.2d 451 (1963); Wirtz v. English, 245 F.Supp. 628 (D.C.Kan. 1965)." Wirtz v. Office Communications Co., 244 F.Supp. 994, 1000, 1001 (1965).

■ Applying that test to the instant case, we find that the providing of temporary employees by B & B company was not a selling of a service to satisfy the needs of the general community, but was a selling of services to satisfy a special segment of the community.

The trial court decision which the administrator refers to in his ruling of October 17, 1967, concluded in 1941 that an employment agency was not exempt. In discussing the effect of an early amendment, the court said:

"In reaching our conclusion we have given weight to the fact that the exemption as to service establishments was added by the conference report to the exemption as to retail establishments already contained in subparagraph (2) of Section 13(a) of the bill. From this it is fair to infer that the type of establishment meant is that which has the ordinary characteristics of a retail establishment except that it sells services instead of goods. In other words it is an establishment the principal activity of which is to furnish service to the consuming public. Typical retail establishments are grocery stores, drug stores, hardware stores and clothing shops." Yunker v. Abbye Employment Agency, Inc., 32 N. Y.S.2d 715, 723 (Mun.Ct.1941).

We do not believe that subsequent amendments bring employment agencies within the exemption now provided for in Section 213(a) (2).

Accordingly, in light of the pre-amendment and post-amendment interpretations, by the administrator, of the exemption provisions of the Fair Labor Standards Act; the rule that exemptions under the Act are to be construed narrowly against the application of the exemption; the need for harmony between federal and state courts if the federal system is not to break down; and the absence of what we believe to be an essential aspect of the sale of retail services as contemplated by Section 213(a) (2) of the Act, we conclude that the trial court erred in dismissing the complaint. The judgment of the trial court is therefore reversed and the case is remanded for a new trial.

STRUTZ, C. J., and TEIGEN, PAULSON and KNUDSON, JJ., concur.