Joann NELSON, Respondent,

v.

MASTER VACCINE, INC., Appellant.

No. C1-85-1385.

Court of Appeals of Minnesota.

Feb. 25, 1986.

Joseph J. Roby, Jr., Duluth, for respondent.

S. Forrest Hutchinson, Duluth, for appellant.

Heard, considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Respondent Joanne Nelson was employed by appellant Master Vaccine, Inc., as an office manager. Nelson sued Master Vaccine for overtime wages under the Fair Labor Standards Act (FLSA). By special verdict, the jury found that Nelson was not exempt from the overtime provisions of the FLSA and awarded her damages of $2,939.07 and attorney's fees of $2,000. Master Vaccine appealed, contending (1) Nelson was exempt, as a matter of law, from the overtime provisions of the FLSA, and (2) the trial court erred in failing to apply the correct measure of damages under federal regulations. Nelson filed a notice of review, seeking liquidated damages in an amount equal to the overtime pay adjudged due and an upward adjustment in the attorney's fees awarded by the trial court. We affirm and modify.

## FACTS

In November 1981 Nelson went to work for an organization called Master Kennel, a business owned by Wayne Nurmi. About a year later, Master Kennel was incorporated as Master Vaccine, Inc. Nurmi is the sole stockholder, director, and officer of Master Vaccine.

Nelson held the title of office manager throughout her tenure at Master Kennel and Master Vaccine. Prior to February 1, 1984, Nelson was paid $6.25 per hour. Up to that date she had worked 97.5 hours in excess of 40 hours per week but was paid only straight time for those excess hours, not time and a half. At trial Nurmi conceded that Nelson was entitled to overtime pay for those hours.

In December 1983 Nurmi offered Nelson her choice of three different compensation plans. Nelson and Nurmi agreed to the option of $250 per week plus five percent of the profits, effective February 1, 1984. A salary of $250 per week is equal to $6.25 per hour for a 40-hour work week. The company did not make a profit in the first or second quarter of 1984, although Nurmi had predicted profits and bonuses for Nelson of $5–6,000 per quarter. Nelson did not receive any compensation above her $250 per week salary and voluntarily quit her job September 28, 1984, before the end of the third quarter.

The sole question submitted to the jury by special interrogatory was: "Was plaintiff employed by defendant in a bona fide executive or administrative capacity?" There was extensive and conflicting testimony concerning whether Nelson's tasks were primarily clerical or managerial in nature. Nurmi maintains that Nelson was "second in command" at Master Vaccine and managed the office with a great degree of discretion. Examples of Nelson's discretion include her authority to sign the company checks, set her own hours, provide input on the hiring of other employees, grant other employees time off, and order supplies.

Nelson contends that her duties and title did not change when she went to a salary basis. She testified that as the most senior and experienced worker, she naturally answered questions and assisted new employees. She testified that she never hired, fired, promoted, granted a pay increase to or disciplined another person. Both Nelson and Nurmi testified that Nelson spent over 50 percent of her time working at a computer terminal entering customer orders and ordering supplies. Nurmi also testified that Nelson spent 10 to 20 percent of her time in the front office performing work similar to the clerical work performed by other employees.

## ISSUES

1. Is the evidence sufficient to support the trial court's determination that Nelson was not employed in an executive or administrative capacity?

2. Did the trial court apply the correct measure of damages in determining the dollar amount of Master Vaccine's obligation for overtime pay?

3. Did the trial court err in failing to award Nelson liquidated damages?

4. Is Nelson entitled to attorney's fees in addition to those awarded by the trial court?

## DISCUSSION

### I

■ Our standard of review is narrow. A jury's answer to a special verdict will be set aside only when it is perverse and palpably contrary to the evidence. Furthermore, Master Vaccine had the burden of proof as to whether Nelson was covered by the "white collar" exception. *Otis v. Mattila*, 281 Minn. 187, 196, 160 N.W.2d 691, 698 (1968).

The FLSA does not apply with respect to "any employee employed in a bona fide executive, administrative, or professional capacity * * *." 29 U.S.C.A. § 213(a)(1) (West Supp.1985). Federal regulations elaborate on these terms. An employee such as Nelson receiving not less than $250 per week is deemed to be an *executive* employee if his

> primary duty consists of the management of the enterprise in which the employer is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees * * *.

29 C.F.R. § 541.1(f) (1985). An employee earning not less than $250 per week is considered an *administrative* employee if his primary duty consists of "the performance of office or nonmanual work directly related to management policies or general business operations of his employer," which includes work "requiring the exercise of discretion and independent judgment * * *." 29 C.F.R. § 541.2(a), (e)(2) (1985).

The testimony indicated that Nelson's job included tasks requiring considerable managerial discretion and supervision over other employees. However, the question under the FLSA is whether Nelson's *primary* duties fell within the white-collar exception. The federal regulations state:

A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time.

29 C.F.R. § 541.103 (1985).

■ Testimony that Nelson spent 50 percent of her time at a computer handling inventory, and another 20 percent of her time handling clerical matters in the front office, supports the jury's finding that Nelson's primary duties were not "in a bona fide executive or administrative capacity" and thus not within the white-collar exception. Given our narrow standard of review, the jury's verdict must be upheld.

### II

Master Vaccine conceded at trial that Nelson was entitled to $305.18 in overtime pay for 97.5 hours worked at the hourly rate prior to February 1, 1984. The trial court determined damages for the period after February 1, 1984, when the parties agreed to a salary of $250 per week plus five percent of any profits. The trial court did not provide any rationale for its computation of damages. Apparently, the court assumed that Nelson was paid an hourly rate of $6.25 per hour during this period and measured overtime wages accordingly to reach a sum of $2,939.07, plus interest.

■ The trial court erred in failing to apply the fluctuating work-week formula to measure Nelson's damages. An employee under 29 C.F.R. § 778.114 (1985) who is "employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid * * * pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many." *Id.*

It is clear from the record in this case that the parties had a written agreement setting forth the pay schedule on a salaried, not hourly, basis. Nelson's testimony on this point clearly shows her understanding that she was so paid. Therefore, her regular pay rate is determined by dividing the total wage ($250) by the total hours *actually* worked in each particular week. *Yadav v. Coleman Oldsmobile, Inc.*, 538 F.2d 1206, 1207 (5th Cir.1976).

The correct measure of damages is, perhaps, best set out in *Mitchell v. Independent Stave Company*, 168 F.Supp. 830 (W.D.Mo.1958):

> Generally, where an employee is paid a fixed salary for work weeks of irregular length, his "regular rate" for the purpose of Section 7 must be computed by dividing the weekly salary by the hours actually worked in that week. One-half of this rate must be paid for all hours worked in excess of 40 in that week.

*Id.* at 832. According to the fluctuating work-week formula, Nelson is entitled to $599.36 in overtime damages for the period she worked on a salary basis. Adding $305.18, the amount the parties agreed was due for the period before February 1, 1984, renders total damages of $864.54.

### III

Under 29 U.S.C.A. § 216(b) (West Supp. 1985), employers are liable to employees for unpaid overtime compensation plus "an additional equal amount as liquidated damages." *Id.* Liquidated damages are mandatory unless the employer makes an affirmative showing of good faith under 29 U.S.C.A. § 260 (West 1985):

> In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201 et seq.], *if the employer shows to the satisfaction of the court* that the act or omission giving rise to such action was *in good faith* and that he had *reasonable grounds* for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

*Id.* (emphasis added).

In *Marshall v. Brunner,* 668 F.2d 748 (3rd Cir.1982), the third circuit explained that liquidated damages are presumed under the statutory scheme of the FLSA:

> Under the Act, liquidated damages are compensatory, not punitive in nature. Congress provided for liquidated damages to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due.
>
> In 1947, upon enactment of section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, Congress provided employers with a defense to the mandatory liquidated damage provision of section 216(b). Essentially, the defense provides that the district court has discretion to award no liquidated damages, or to award an amount of liquidated damages less than the amount provided by section 216(b) of the FLSA, *if, and only if,* the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act. *Thus, before the district court's discretion may be invoked, the employer has the "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." In the absence of such a showing, the district court has no discretion to mitigate an employer's statutory liability for liquidated damages.*

*Id.* at 753 (emphasis added) (citations omitted; footnote omitted).

■ In the present case Nelson testified that Nurmi refused to consider overtime pay although he was aware that his employees desired to be paid overtime. Nur-

mi testified that before he formed Master Vaccine, he was an hourly worker and had received overtime pay for working more than 40 hours in a week. Nurmi failed to cite any reasonable grounds for his failure to comply with the Act. The trial court made no finding of good faith; Nelson is therefore entitled to liquidated damages of $864.54.

## IV

Nelson requested attorney's fees by motion with a supporting affidavit. The total amount billed was $3,291. In its order for judgment the trial court awarded Nelson attorney's fees in the amount of $2,000. The trial court did not make any findings to explain how it arrived at this award.

The FLSA provides for the award of attorney's fees to prevailing employees:

> The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C.A. § 216(b) (West Supp.1985) (emphasis added). Use of the word "shall" makes the award of attorney's fees mandatory, not discretionary. *Luther v. Z. Wilson, Inc.*, 528 F.Supp. 1166, 1176 (S.D.Ohio 1981).

The amount of attorney's fees ordinarily lies within the discretion of the trial court. *King v. McCord*, 621 F.2d 205, 206 (5th Cir.1980). However, it would undermine the remedial purpose of the FLSA to allow the trial court to deny a prevailing employee attorney's fees without first finding that the fee request was unreasonable.

The affidavit provided to the trial court adequately described the work that was done on Nelson's FLSA claim, as well as the date and hours the tasks were performed. The rate of $65 per hour is not manifestly unreasonable for this kind of work. Therefore, noting the mandatory and remedial nature of fee awards under the FLSA, we find that the trial court abused its discretion in denying Nelson's entire request of $3,291.

We deny Nelson's request for additional attorney's fees attributable to the cost of this appeal. In doing so we note that Master Vaccine prevailed in its claim that the trial court did not apply the proper measure of damages. Furthermore, the fact that Nelson filed a notice of review is evidence that she was not overly burdened by this appeal.

## DECISION

The jury's verdict that Nelson was not employed in an executive or administrative capacity under the FLSA is affirmed. The fluctuating work-week measure of damages is applied, and the trial court's award of damages of $2,939.07 is modified to $864.54. Liquidated damages of an additional $864.54 are awarded, to bring the total damages to $1,729.08. The trial court's award of $2,000 to Nelson for attorney's fees is modified to $3,291. No attorney's fees are awarded for this appeal.

Affirmed as modified.